56 So.2d 456 (1952)
SCHOTT, Director of State Beverage Department
v.
BROOKS et al.
Supreme Court of Florida, Special Division A.
January 4, 1952.
Rehearing Denied February 11, 1952.
*457 Robert L. Achor, Miami, for appellant.
William J. Pruitt, Miami, for appellee.
THOMAS, Justice.
A writ of certiorari issued from the Circuit Court of Dade County to review an order of the director of the beverage department suspending for ninety days the privilege of the appellee to dispense intoxicating liquors at a place called the Black Cat.
The director had notified the appellee that sufficient cause had been shown for the suspension of his license, and had detailed the misdeeds charged to him. The appellee was advised that if he wished a hearing, a day and place for it would be designated. It was pursuant to this hearing where testimony requiring more than three hundred fifty pages for transcription was taken that the director entered the order of suspension.
In his petition for certiorari appellee represented that witnesses had testified at the hearing "* * * both for and against your petitioner, * * *" and he challenged in considerable detail the sufficiency and value of the evidence relating to the various charges preferred by the director. This was capped by the assertion that the essential requirements of law had not been observed, and ten "reasons relied upon by petitioner" were given to justify issuance of a writ of certiorari. Seven of these dealt with the matter of evidence. For instance, it was alleged that the order was contrary to the evidence, contrary to the weight of the evidence, unsupported by the evidence, and was founded on evidence that failed to establish the licensee's guilt. The other three reasons amounted to charges that the order was oppressive, and was illegal because it lacked specific findings.
The appellee concedes that the director has the power to revoke or suspend a license. In his order, the circuit judge cited Sec. 561.29, Florida Statutes 1949, and F.S.A., granting the director authority to take such action and observed that the charges against appellee were serious and sufficient "if true", to warrant suspension. He then commented on the motive for the action against appellee, stating that the "* * * charges were preferred by a local `gestapo', the existence and activities of which * * are exposed by the evidence * * *." He thought they were "instigated by administrative and police officials * * * as a punitive measure directed against a dissenter, who, because of his political opposition, has incurred the bitter animosity of the incumbent administration." He concluded that the supporting evidence was not substantial, that it was affected by perjury and prejudice, and that the production of "some" evidence did not meet "the essential requirements of law, regardless of the unsubstantial character of such evidence."
From the representations in the appellee's petition for certiorari and the remarks of the trial judge, we are convinced that the matter was determined more on the weight and credibility of the testimony heard by the director than the effect of the entire testimony; that the essential requirements of law were considered not to have been followed, because the fibre of the evidence was weakened by political motive, falsehood, and prejudice.
"Review by certiorari does not ordinarily extend to a consideration of the probative force of conflicting testimony, * * *." Exceptions to the rule may be invoked where the jurisdiction of the court is affected or "where [the evidence] is so manifestly contrary to the finding * * * as to show a palpable abuse of the power to determine the controverted facts * * * or where the finding clearly indicates that the evidence was not duly considered * *." Atlantic Coast Line R.R. Co. v. Florida Fine Fruit Co., 93 Fla. 161, 112 So. 66, 68, 113 So. 384. This court does not "* * * *458 weigh the effect of the evidence; * * *" but will examine it "* * * when a wrong rule of law is enforced as to its application." Mutual Ben. Health & Accident Ass'n v. Bunting, 133 Fla. 646, 183 So. 321, 330. To determine whether a wrong rule of law was applied the record will be examined to see if there was "any" evidence to support the finding. Mutual Life Ins. Co. of New York v. Johnson, 122 Fla. 567, 166 So. 442.
The controversy here may be decided by answering the question whether considering the evidence as a whole proof, gauged by our decisions on the subject, can be found to justify the suspension, or to state it otherwise, whether the evidence was so deficient that the order amounted to a disregard of the essential requirements of law.
Before approaching the subject of proof it is well to see if the requirements of law with reference to the manner of notifying the licensee and conducting the inquiry were followed. Although a decision of the case seems to hinge on the nature of the evidence we are prompted to examine closely the provisions of the quoted statute because of the criticism that the order was wanting in findings, and was arbitrary and oppressive.
The legislature has given the director "* * * full power and authority upon sufficient cause appearing of the violation * * * of any of the laws of this state, or of * * * maintaining a nuisance * * * or permitting disorderly conduct on the premises * * * to * * suspend the license of any licensee." Before exercising the power he must furnish the licensee a written statement of the cause for disciplinary action and give him a fair hearing if that be demanded. At the hearing the licensee is entitled to produce witnesses and be represented by counsel.
The director had specified in his notices that the licensee had permitted gambling, a violation of state law, had maintained a nuisance and had allowed disorderly conduct on the premises.
The appellee was notified, and he produced his witnesses at the hearing; the hearing was conducted by the director with obvious fairness; and throughout the appellee was represented by able counsel. It is plain from the record that the investigation was thorough and unhurried.
We now advert to the testimony which we have carefully read. There were attempts at impeachment, and there were conflicts between the testimony of witnesses for the department on the one hand and for the proprietor on the other, but in no instance to an unusual degree. Cross examinations were skillful and rulings were just.
But from the transcript taken in its entirety, even had a court in certiorari proceedings the prerogative of choosing between the groups of witnesses testifying for the two adversaries passing upon the credibility of witnesses, reconciling conflicts or otherwise weighing the testimony, we cannot agree that the director was amiss in concluding that the appellee should be penalized for the goings on in and around the Black Cat.
It cannot be successfully argued that there was a lack of evidence of the placing of a bet on horse races with the bartender in the presence of the appellee, or so near him that he could have seen had he paid attention to the transaction; or want of proof of brawling, profanity, obscenity, drunkenness, ribaldry, hubbub, and hullabaloo to such an extent as to amount to disorderly conduct on the part of the participants and to constitute the tavern, as operated, a nuisance.
It is patent that the director found the licensee guilty of the charges and that the order of suspension for the relatively short period of ninety days was not oppressive or arbitrary.
Bearing in mind the narrow field for operation of the proceeding in certiorari, so far as the consideration of the evidence is concerned, we are impelled to the ruling that the writ should have been discharged and the order of the director reinstated.
It is so ordered 
Reversed.
SEBRING, C.J., TERRELL, J., and MURPHREE, Associate Justice, concur.