97 So.2d 169 (1957)
TROPICAL PARK, Inc., a Florida corporation, and Maurine J. Hirshstein, Petitioners,
v.
C.H. RATLIFF, John R. Ring, J.D. Johnson, C. Sweet Smith and Warren H. Toole, Jr., as and constituting the Florida State Racing Commission, Respondents.
Supreme Court of Florida.
August 14, 1957.
On Rehearing October 4, 1957.
Walter E. Dence, Miami, for petitioner Maurice J. Hirshstein.
Worley, Gautier & Dawes, Miami, for petitioner Tropical Park, Inc.
Richard W. Ervin, Atty. Gen., George E. Owen, Asst. Atty. Gen., George F. Gilleland, Atty., State Racing Commission, Miami, Richard E. Gerstein, State Atty., 11th Judicial Circuit, and Leonard R. McMillen, Administrative Assistant, 11th Judicial Circuit, Miami, for respondents.

On Rehearing
PER CURIAM.
Upon reconsideration on rehearing granted, we adhere to the judgment previously entered. The special concurring opinion by Mr. Justice Hobson[1] sets forth the history of the litigation and the points involved on the appeal. No further discussion is needed as to charges one, two, three, five, six and eight, since it clearly appears from what was said in such opinion that the Commission's order, insofar as it was predicated upon these charges and the evidence submitted, cannot be sustained.
As to charge seven, it appears that such was predicated upon a violation by Mr. Silberman, president of Tropical Park, Inc., of Rule 386(B) of the Commission, which reads as follows: "The Association is responsible to see that no unauthorized person used their telephones during the period from thirty (30) minutes prior to the first race to fifteen (15) minutes after the last race of the day." Mr. Silberman admitted *170 that he allowed employees and bona fide patrons of the track to use his private telephone at any time, and thus there was a technical violation of the Commission's rule. Section 550.07, Fla. Stat. 1955, F.S.A., authorizes the Commission to revoke a racing permit or license only "upon the willful violation of any of the provisions of this chapter, or of any rule or regulation issued by the commission under the provisions of this chapter, by the licensee." (Emphasis added.) The words "or of any rule or regulation issued by the commission under the provisions of this chapter" were added to the statute by Ch. 17276, Acts of 1935. Prior to the amendment, this court held that the word "willful" as used in the statute meant "knowingly and of a stubborn purpose, with evil intent, without justificable (sic) excuse." Six Mile Creek Kennel Club, Inc., v. State Racing Commission, 1935, 119 Fla. 142, 161 So. 58, 59.
Apparently conceding that there was no direct evidence to show that Mr. Silberman's violation of the rule was "willful" as above defined, the Commission contends that "the manner in which the telephone calls were made, the place called, the person called, the person doing the calling, the time of the calls and duration of these calls concerning horse racing * * * has imputed the knowledge as to the illegal use to the petitioner." If by "illegal use" the Commission meant a use for an illegal purpose, the answer to this contention is contained in the opinion by Mr. Justice Hobson in his discussion of charges six and eight. If, on the other hand, by "illegal use" the Commission intended to refer to a use by an unauthorized person or persons, we agree that the evidence was sufficient to show a technical violation of Rule 386(B) by Mr. Silberman.
So the question now before us narrows down to whether or not the technical violation of the above-mentioned rule is sufficient to warrant the revocation of petitioner's license. In this connection the Commission contends that "[t]he writ of certiorari may not be used to determine the weight of the evidence or the sufficiency of the evidence where there is some evidence supporting the judgment complained of, and the Supreme Court will not examine the evidence to determine whether it is of sufficient probative force to sustain the verdict * * *." While administrative agencies are given broad latitude in the performance of their duties, we cannot accept a contention that their decisions in the exercise of a quasi-judicial function are beyond the reach of the judicial process, regardless of how arbitrary or unreasonable they might be. To do so would be tantamount to an abdication of the power and responsibility reposed in the courts by Sec. 4 of the Declaration of Rights of our Constitution, F.S.A., in the following language:
"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."
The rule as to judicial review of administrative decisions is well stated, and the statement supported by numerous decisions, in 42 Am.Jur., Public Administrative Law, Sec. 209, p. 610 et seq., as follows:
"In general, in the absence of valid statutory provisions or other factors affecting the scope and extent of judicial review, administrative determinations will not be interfered with by the courts unless, but will be interfered with where, the determination is * * * without or in excess of the statutory powers and jurisdiction of the administrative authority, the determination is an exercise of power so arbitrary or unreasonable as virtually to transcend the authority conferred, or is otherwise an abuse of discretion, * * *."
This is the rule in Florida. See State ex rel. Williams v. Whitman, 1934, 116 Fla. 196, 156 So. 705, 95 A.L.R. 1416; Six Mile *171 Creek Kennel Club, Inc., v. State Racing Commission, supra, 161 So. 58; Cohen v. Schott, Fla. 1950, 48 So.2d 154, 156; cf. Schott v. Brooks, Fla. 1952, 56 So.2d 456.
In Cohen v. Schott, supra, this court reviewed a decision of the State Beverage Director revoking a beverage license of the licensee because of an admitted violation of the Beverage Act prohibiting the sale of intoxicating beverages to minors. In holding that the Beverage Director was not justified, under the facts, in so doing, this court speaking through Mr. Justice Terrell said:
"The law makes the sale of intoxicating beverages a legitimate business, imposes a high tax for the privilege of engaging in it and exacts a high degree of rectitude of those who do so. An inquisition into a charge of violating the conditions of one's license is in no sense criminal but equitable in nature and should be adjudicated on equitable principals. (Emphasis added.)
"In a collection of memorabilia of early Western history there was discovered the record of the trial of a man for stealing a pair of boots. The boots were indicated as exhibit A. The verdict of the jury was not guilty  but with the recommendation that the defendant return the boots. We are convinced that these primitive jurors had a very discriminating sense of justice that is too fast being relegated to the limbo of the law by technical niceties. I am often made to feel that a better brand of Justice would follow if we cultivated it more."
The facts with which we are here concerned are very similar to those in Cohen v. Schott, supra. There was a technical violation of the Commission's Rule 386(B) and undoubtedly some degree of negligence on the part of petitioner's president for which he should be censured and reprimanded. But it must be remembered that the racing industry, like the whiskey industry, is a legitimate business in this state in which millions of dollars have been invested by the petitioner and other owners. Whether or not we approve of pari-mutuel betting at race tracks, we must accept the fact that the state sovereignty has long since approved it and has laid heavy taxes upon it, which are a substantial part of the tax economy of this state. And to hold that the license of the petitioner could be revoked for this type of dereliction would inculcate into the racing industry an instability of ownership which, in our opinion, would not best serve the public interest. It is of passing interest, although inapplicable in this case, to note that the 1957 Legislature enacted Ch. 57-180, Acts of 1957, F.S.A. §§ 550.02(4), 550.04, 550.06, 550.07, authorizing the Commission to impose a civil penalty against a licensee for violation of its rules or the statute. This demonstrates that the legislative body recognized that there may be many rule violations where the penalty of revocation would be harsh and oppressive and a civil penalty more in keeping as a penalty for the infraction.
Where, as here, there is no evidence that the negligent supervision of the telephone resulted in any illegal result, it would indeed be harsh and inequitable to impose the extreme penalty of revocation upon petitioner and, in our opinion, would be so arbitrary and unreasonable as virtually to transcend the authority conferred upon the Commission. We hold, therefore, that the order of revocation complained of cannot be predicated upon charge seven; and for this reason, and the reasons stated in the opinion by Mr. Justice Hobson as to the other charges, we adhere to our former judgment. Accordingly, the order here reviewed is quashed, with directions that consideration be given to the imposition of an order of censure or reprimand.
It is so ordered.
TERRELL, C.J., ROBERTS and O'CONNELL, JJ., and ALLEN, District Judge, concur.
*172 HOBSON and DREW, JJ., concur specially.
THOMAS, J., dissents.
DREW, Justice (concurring specially).
I agree with the foregoing opinion and judgment, but with the observation that it concerns only the situation revealed by the record in this cause. Although the misuse of the telephone was going on all or most of the racing season, no attempt was made to advise the track officials of the violation or demand a cessation of such activities. Had that been done and had the responsible officials continued to violate the Rule, I would be inclined to the view that such would be "willful" within the meaning we have given the word here. I am unwilling to say  under facts different from those here  that a license may not be lawfully revoked by the Commission. Moreover, I think it pertinent to observe in our mention of Chapter 57-180, Acts of 1957, F.S.A. §§ 550.02(4), 550.04, 550.06, 550.07, we are in no way expressing any view as to the constitutionality or validity of the 1957 Act.
HOBSON, Justice (concurring specially).
The petitioners seek a writ of certiorari to have this court review an order entered by the Florida State Racing Commission wherein and whereby said Commission revoked the license theretofore issued to Tropical Park, Inc., to operate a horse race track and carry on pari-mutuel wagering as authorized by law. The Commission further ordered "that Mr. Maurice J. Hirshstein be denied the privilege of attending any pari-mutuel operation in this state."
Maurice J. Hirshstein challenges this order insofar as it affects him individually upon the ground that he neither received a notice nor an opportunity to be heard. It is true that he was a witness in the hearing in connection with the matter of the proposed revocation of a racing permit which had been issued to the petitioner Tropical Park, Inc. He did not, however, receive a notice that any "proposed action" against him was contemplated nor did he have a hearing pursuant to such a notice.
In the case of Hickey v. Wells, Fla., 91 So.2d 206, 208, we quoted with approval from Schwartz, American Administrative Law, at page 75, as follows:
"All that should be required of an administrative notice is that the information given be `clear enough to apprise the informed party of the proposed action and the fact on which it hinges * * *'". (Italics supplied.)
This record fails to disclose any notice of any "proposed action" against Hirshstein. Indeed, it is obvious that no notice of any type was directed to him. The only notice disclosed by this record reads:
"In the Matter of the Revocation of a Racing Permit Heretofore Issued to Tropical Park, Inc.

"Notice to Show Cause
"Whereas, sufficient evidence has been presented to the Florida State Racing Commission which, if true, would warrant said commission to revoke a permit heretofore issued to you under the provisions of Chapter 550, Florida Statutes [F.S.A.], to conduct a race track in the State of Florida where pari-mutuel wagering is authorized in that you have by and through one of your officers, to wit: the president, Saul Silberman, done the following:
"1. That you did during the race meeting of 1956-57 between November 27, 1946 and January 16, 1957, both dates inclusive, have an employee in your employ connected with horse racing to wit: one Maurice J. Hirshstein, who knowingly associated with persons commonly known as bookmakers or criminals, contrary to Section 550.181, Florida Statutes [F.S.A.].
"2. That you did employ the said Maurice J. Hirshstein during the 1956-57 race meeting without requiring the said Maurice J. Hirshstein to secure an occupational *173 license and pay the tax as required by Section 550.10 Florida Statutes [F.S.A.], and Rule 341 of the Florida State Racing Commission Rules and Regulations of Horse Racing and contrary to Rule 345 of the said Rules and Regulations of Horse Racing.
"3. That you did employ the said Maurice J. Hirshstein during the race meeting of 1956-57 without requiring the said Maurice J. Hirshstein to furnish the Florida State Racing Commission a copy of his fingerprints and photograph as required by Sub-Section 2 of Section 550.181, Florida Statutes [F.S.A.] and Rule 350 of the Florida State Racing Commission Rules and Regulations of Horse Racing.
"4. That one of your officers, to wit: the President, Saul Silberman did, while being the president of a corporation, holding a racing permit in the State of Florida, knowingly associate during the 1956-57 race meeting at Tropical Park with persons commonly known as bookmakers or criminals.
"5. That an officer of the permit holder to wit: Saul Silberman, President, unlawfully and without authority did make large bets or wagers with the mutuel department at Tropical Park, Inc., during the race meeting of 1956-57 without depositing any money for such bets with the mutuel department, but in fact made said bets `on credit' contrary to Section 550.16, Florida Statutes [F.S.A.].
"6. That you, the said permit holder, did by and through one of your officers, to wit: Saul Silberman, President, knowingly permit and allow the telephones, of the corporation and license holder, to be used in violation of Section 550.35, Florida Statutes [F.S.A.], which is to say knowingly permitted said telephones to be used for the purpose of communicating to another, information relating to horse racing from a race track in the State of Florida, to wit: Tropical Park, between the period of time beginning one (1) hour prior to the first race of a given day and ending thirty (30) minutes after the posting of the official results of each race as to that particular race and that said communication was permitted during the race meeting of the 1956-57 season.
"7. That you, the said permit holder, did by and through one of your officers, to wit: Saul Silberman, the President, violate Rule 386 of the Rules and Regulations of Horse Racing as adopted by the Florida State Racing Commission in that he permitted the telephones of the permit holder to be used by unauthorized persons during the period from thirty (30) minutes prior to the first race to fifteen (15) minutes after the last race of the day, during the 1956-57 race meeting.
"8. That the licensee, Tropical Park, Inc., did knowingly by and through one of your officers, to wit: Saul Silberman, the President and an employee, Maurice J. Hirshstein, transmit racing information by means of the telephones of the permit holder, Tropical Park, Inc., from its private office and the switchboard of the corporation at Tropical Park, located in Dade County, Florida, during the racing hours, horse racing information to another person, to wit: one Phillip Gerson, a convicted bookmaker and gambler when the said information was known by the communicants to be intended to be used for illegal gambling purposes and in the furtherance of gambling and that the said transmission of racing information was carried on between November 27, 1956 and January 16, 1957.
"Wherefore, you, the said Tropical Park, Inc., the permit holder by and through your officers and directors will appear before the Florida State Racing Commission on the Top Floor of the Biscayne Terrace Hotel, 340 Biscayne Boulevard, Miami, Florida, at 9:00 A.M. on February 25, 1957 and show cause, if you have any, why the permit and license, heretofore issued to you in this state to operate a horse race track and carry on pari-mutuel wagering as authorized by law should not be revoked for the foregoing reasons.
*174 "On said date, all interested parties will be given an opportunity to be heard and may be represented by counsel, if desired. You and each of you may govern yourself accordingly.
"Done and ordered at Miami, Dade County, Florida
"This 19th day of February, A.D. 1957.
 "Florida State Racing Commission
 "s/ C.H. Ratliff,
 Chairman
 "s/ John R. Ring
 Secretary."
The notice does charge Tropical Park, Inc., with knowledge of conduct of Maurice J. Hirshstein which the Commission indicated, if true, would justify revocation of the racing permit which had been issued to Tropical Park, Inc. This is wholly insufficient to constitute a proper notice to Hirshstein of any "proposed action" against him.
We therefore conclude that certiorari must be granted to the challenged order insofar as it directed "that Mr. Maurice J. Hirshstein be denied the privilege of attending any pari-mutuel operation in this state", and that part of said order should be quashed.
In this connection we hold only, as we did in La Gorce Country Club v. Cerami, Fla., 74 So.2d 95, that Hirshstein did not receive notice and an opportunity to be heard to which he was entitled. We do not mean to hold that the Florida Racing Commission does not have the power under Sec. 817.37(4), Sec. 849.24(4) and (5), or other rules or statutes, to eject an undesirable person upon information which establishes "probable cause" without first affording him a hearing. The order in this case denying Hirshstein "the privilege of attending any pari-mutuel operation in this state" was entered pursuant to a putative hearing ordered by the Commission without proper notice of the "proposed action" and an opportunity to be heard. Since this procedure was adopted by the Commission, Hirshstein still has the right to a lawful hearing upon the merits.
We now turn to the opinion and order of the Florida State Racing Commission which is challenged by the petitioner Tropical Park, Inc. We need deal only with charges two, three, five, six, seven and eight, because they are the charges upon which the order of the Florida State Racing Commission is predicated.
Respondents contend that Tropical Park, Inc., has not demonstrated its rights to the issuance of a writ of certiorari because it has failed to establish that respondents did not adhere to the essential requirements of the law in conducting the administrative hearing in this case and in reaching their decision revoking the license of the petitioner. However, respondents admit that certiorari "is the correct remedy to review the action of an administrative agency or board exercising quasi-judicial functions; Neivert v. Evans, Fla., 82 So.2d 599, and that in certiorari proceedings to review an order of an administrative body the court may inspect the record of the proceedings before the administrative body to ascertain whether that body proceeded in accordance with authority conferred on it by the controlling law. The writ of certiorari may not be used to determine the weight of the evidence or the sufficiency of the evidence where there is some evidence supporting the judgment complained of, and the Supreme Court will not examine the evidence to determine whether it is of sufficient probative force to sustain the verdict; Seven Seas v. Buckholtz, 121 Fla. 205, 163 So. 567; City of Jacksonville Beach v. Waybright, 130 Fla. 525, 178 So. 401."
The only criticism that we have of respondents' admission is in connection with the words "some evidence". The true rule is that this court will not, on certiorari, determine the weight of the evidence or its sufficiency where there is competent, substantial evidence supporting the challenged judgment.
*175 Petitioner, Tropical Park, Inc., admitted that it had not required Hirshstein to secure a license or to furnish his fingerprints and photograph to the Florida Racing Commission. The explanation given for such failure was that it was not thought that Mr. Hirshstein, as a public relations representative, was required to obtain a license or furnish a photograph and be fingerprinted any more than attorneys, accountants or other such employees. The Racing Commission obviously determined that this was not the proper construction of the law under the evidence in this case. We agree with this determination, but we do not concur in the conclusion that such construction was spurious and that Tropical Park, Inc., wilfully, that is to say "knowingly and of stubborn purpose, with evil intent, without justifiable excuse", failed to require Hirshstein to secure a license or furnish the Racing Commission with his fingerprints and a photograph. See Six Mile Creek Kennel Club, Inc., et al v. State Racing Commission, 119 Fla. 142, 161 So. 58. Undoubtedly, a reprimand would have been in order for these infractions but the evidence as a whole has the effect of putting the petitioner, Tropical Park, Inc., out of a business permitted by law and which entails an investment of several million dollars. Particularly is this so in view of the fact that charges two and three were what might be called eleventh hour charges and no fair opportunity was ever afforded Tropical Park, Inc., to comply with the law after a determination that it should so do. The record discloses that throughout the 1956-57 race meeting, Mr. Hirshstein's daily activities were open and could have been observed by representatives of the Florida Racing Commission, yet no suggestion until charges two and three were filed was ever made that Tropical Park, Inc., had failed to comply with the law in connection with Hirshstein's failure to secure a license and to furnish his fingerprints and a photograph to the Commission.
It was established under charge five that Mr. Silberman, president of Tropical Park, Inc., made bets throughout the 1956-57 race meeting on what respondents call "credit". Actually the evidence shows that the bets made by Mr. Silberman were made through the pari-mutuel machines and the only credit connected therewith was that which Tropical Park, Inc., extended to Mr. Silberman. The tracks made the payments regularly to the State of Florida of its share of the money to which the state was entitled, and the betting public was not adversely affected.
Respondents contend that such type of credit betting is illegal and contrary to Florida Statutes 1955, § 550.16(1), F.S.A., which reads:
"The sale of tickets or other evidence showing an interest in or a contribution to a pari-mutuel pool is hereby permitted within the enclosure of any horse race track and dog race track licensed and conducted under this law, but not elsewhere in this state except as is provided in chapter 551. The sale and purchase of tickets or other evidence showing an interest in or a contribution to pari-mutuel pools in this state shall be under the supervision of the state racing commission and shall be done subject to such regulations as the state racing commission shall from time to time prescribe."
An analytical examination of Sec. 550.16 (1) and other sections of our statute dealing with pari-mutuel pools convinces us that the type of "credit" betting indulged in by Mr. Silberman is illegal. Undoubtedly it was the legislative intent that these pari-mutuel pools be made up of cash contributions. We believe, however, that the existing provisions of the applicable Florida statute are not sufficiently clear and definite to apprise a layman of the fact that "credit" betting of the type here under consideration is prohibited and that the severe penalty of revocation may be invoked if such betting is engaged in by anyone who is in a position to be allowed such practice or privilege. We hold, therefore, under the circumstances, and since no one is *176 shown to have been harmed, that the revocation order should not be upheld insofar as it is predicated upon charge number 5. There can be no doubt that a rule or regulation clearly prohibiting and making illegal "credit" betting could and should be prescribed.
The testimony of Mr. Silberman himself shows that he was at least technically, if not wilfully, guilty of charge number seven. Rule 386 promulgated by the Commission delineates the responsibility of the track for guarding use of its telephones. The unsupervised, unrestricted use of telephones at a race track is indeed a serious matter. Silberman attempted to explain his dereliction and avoid its possible consequences by stating that his laxity in this connection was due to his desire to create and retain the good will of the patrons of his track. It is true that good will might thus be engendered in certain quarters. However, it would be more apt to be created among unsavory and undesirable, than among respectable race track habitues. No person, if he be of honest purpose, could reasonably object or take offense at supervision of his use of a track telephone exercised as required by law in the interest of the public. We are constrained, only because this is apparently a first offense and was not wilful in the sense of being "of stubborn purpose" and with "evil intent", to hold that the extremely harsh penalty of revocation is too severe to be sustained based upon charge number seven. In this connection, we deem it appropriate to observe that the law grants no power to the Commission except the power to revoke a permit for violations of our statute, and certainly the Commission should be commended for its zeal in attempting to keep clean the operation of pari-mutuel betting at race tracks in this state.
The remaining charges six and eight are the charges to which serious consideration must be given. At the threshold it should be observed that the evidence in support of these charges is entirely circumstantial in character. There is no direct testimony to the effect that Hirshstein was guilty of any violation of a rule or of the law, and certainly there is no showing by positive testimony that Mr. Silberman or any other official of Tropical Park, Inc., knew of any such alleged violation. Respondents say that the petitioner, Tropical Park, Inc., indulged in the erroneous assumption "that this was a criminal proceeding and that the evidence had to meet the test for criminal conviction". Respondents then make the bald assertion that "such is clearly not the rule in cases of this nature". Petitioner, on the other hand, states that in a case of this character "the evidence must be so clear, strong and unequivocal as to remove from the minds of the members of the Board every reasonable doubt as to the guilt of the petitioner as charged". This is a quotation from an opinion and order entered by the Honorable Charles A. Carroll, Circuit Judge, in the case of Hickey v. Wells, which was quoted in an opinion by Mr. Chief Justice Drew in the case of Hickey v. Wells, Fla., 91 So.2d 206. See also State ex rel. Tullidge v. Driskell, 117 Fla. 717, 158 So. 277, 279. We did not, in the Hickey v. Wells case, supra, approve or disapprove this rule in connection with evidence in a case before an administrative board with power to revoke a license or permit. The rule, of course, has reference to the consideration of direct or positive testimony. It is obviously more nearly a twin brother of the criminal rule with reference to the evaluation of conflicting testimony than it is of the civil rule and it parallels the rule which is applicable to cases wherein fraud is charged. It might be said that charges such as those made in the instant case are analogous to charges of fraud, but we need not, and therefore do not, adopt or reject the rule enunciated by Judge Carroll in the Hickey case. This is true because those charges which were not admitted by way of confession and avoidance (charges six and eight) are contended to have been sustained upon circumstantial evidence only.
Furthermore, we do not deem it necessary to determine whether the criminal or *177 the civil rule with reference to circumstantial evidence should be invoked in connection with cases of this character because the circumstantial evidence in this case does not meet the test prescribed by either.
Mr. John Loome, who is characterized in the brief of respondents as a "racing expert", testified that it was just as logical to believe that Hirshstein was giving out racing information as it was to believe that he was receiving it.
Mr. Madalla, a former F.B.I. agent, and who also was qualified as an expert on racing, testified in response to a hypothetical question which plumbed the evidence in this case that he could not say, but could only guess that racing information was being transmitted by Mr. Hirshstein via long distance telephone.
Under the civil rule with reference to circumstantial evidence, it is necessary that the inference of guilt of charges such as are made herein must preponderate over all contrary inferences. Evidence which gives rise to an inference of guilt which is just as "logical" as an inference of innocence does not even meet the test prescribed by the civil rule. It certainly does not meet the test of the criminal rule with reference to such evidence because under that rule the inference of guilt must be to the exclusion of every reasonable inference of innocence.
We have thus far dealt with the circumstantial evidence in connection with the conduct or activities of Mr. Hirshstein. We now turn our attention to this same circumstantial evidence in connection with the charges against Tropical Park, Inc. Had our conclusion been different in connection with the circumstantial evidence concerning Mr. Hirshstein's activities or conduct, it would still have been necessary to determine whether Tropical Park, Inc., should be found guilty by further inference from the circumstantial evidence herein, that it had wilfully violated any of the provisions of the statute.
Assuming that we had heretofore held the circumstantial evidence sufficient to justify a finding under the civil rule with reference to such evidence, that Mr. Hirshstein had violated the law, it is not permissible to pyramid upon such inference the further inference that Mr. Silberman or any other official of Tropical Park, Inc., knew of his alleged conduct and wilfully permitted it. The only justification for pyramiding one inference gleaned from circumstantial evidence upon another is in cases where the first inference deduced from circumstantial evidence meets the test of the criminal rule with reference to such evidence. Voelker v. Combined Insurance Co. of America, Fla., 73 So.2d 403. It is clear that the inference from the circumstantial evidence in this case with reference to Hirshstein's conduct does not under any stretch of the imagination meet the test of the criminal rule with reference to such evidence. We know of no rule where circumstantial evidence is relied upon which permits guess predicated upon guess or conjecture upon conjecture.
We quote with approval from Volume 1, Florida Jurisprudence, Administrative Law, Sec. 120, wherein it is stated,
"As in court proceedings, the burden of proof is on the party asserting the affirmative of an issue before an administrative tribunal. In an administrative proceeding for the removal of a police officer on a charge of taking a bribe the police officer is assumed to be innocent until he is proved guilty and his guilt cannot be based on guess-work and suspicion." (Emphasis supplied.)
See also State ex rel. Hawkins v. McCall, 158 Fla. 655, 29 So.2d 739.
For the reasons stated and the additional reasons set forth in the majority per curiam opinion on rehearing, I adhere to the original reversal and agree to the opinion and judgment of the majority.
NOTES
[1] For special concurring opinion by Mr. Justice Hobson see 97 So.2d 172.