194 So.2d 321 (1967)
J.H. TAYLOR and Margie Y. Taylor, d/b/a Cock & Bull Club, Petitioners,
v.
STATE BEVERAGE DEPARTMENT of Florida and Director of State Beverage Department of Florida, Respondents.
No. 7246.
District Court of Appeal of Florida. Second District.
January 27, 1967.
*322 C.J. Abernathy, of Jenkins & Abernathy, St. Petersburg, for petitioners.
Maurice M. Paul, Regional Counsel, for State Beverage Dept., Orlando, for respondents.
PIERCE, Judge.
This is a petition for writ of certiorari to review an administrative order issued on June 1, 1966, by the Director of the State Beverage Department revoking the alcoholic beverage license of the owners of the Cock & Bull Club located on the outskirts of St. Petersburg, Pinellas County, Florida.[1]
On February 8, 1966, the Director issued a "Notice to Show Cause" to the owners of the Club, advising that "certain evidence" had been presented to him indicating sufficient cause to warrant the suspension or revocation of the Club's beverage license under the laws of Florida. The "Notice" alleged five "counts", (1), (3) and (5) of which were dismissed by the Director. "Counts" (2) and (4) alleged respectively that on November 12, 1965, at approximately 11:30 o'clock P.M., one Bryan Charles Langford, a minor, was served an alcoholic beverage upon the premises, and likewise as to one John Rodney Cain, a minor, at the same time and date. Thereafter formal hearing and taking of testimony was had before the Director, resulting in the order of revocation of the Club's beverage license as aforesaid. The owners of the Club filed petition for writ of certiorari in this Court, asking that the revocation order be here reviewed and quashed, contending that the order "constitutes a departure from the essential requirements of law."
The facts are without substantial dispute. The Cock & Bull Club is a well-known and successful night club, restaurant, and dancing emporium located on the outskirts of St. Petersburg and, as is usual, has an alcoholic beverage license in connection with *323 such operation, entitling the Club to sell, dispense, and permit consumption upon the premises of alcoholic beverages under the provisions of F.S. Chap. 561, F.S.A. It is known, in the vernacular of the current breed of night club habitues, as a Go-Go Club, which, as everyone knows, first derived its appellation from an enthusiastic but stuttering press agent. The particular type of alcoholic beverage license which the Cock & Bull Club has is what is known as a "special restaurant license",[2] under which minors are legally permitted on the premises and inside the building, dancing, dining, and listening to the music; but they cannot lawfully be served an alcoholic beverage or consume it on the premises.
As stated, Cock & Bull is a highly popular Club and, according to the Director's findings, "it is not uncommon for 400 to 600 young people to be on the premises on any given evening". On the night of November 12, 1965, the two youths, Langford and Cain, aged 20 and 17 years respectively, were each sold and served a bottle of beer by a bartender in the Club, and were, after questioning, taken into custody by a State Beverage Department agent, who instigated administrative proceedings against the Club for civil violation of the State Beverage law, resulting in the ultimate revocation of license.
Notwithstanding it was lawful for minors to be in the Club because of the special license, the owners had maintained a rigid policy, since it had first opened for business five months previously, to take every precaution reasonably possible to keep minors from entering. Rather than relying entirely upon the "old hat" system of bartenders and waitresses scrutinizing singly each prospective patron before serving and demanding identification of those who looked doubtful of majority, the owners had installed door-checkers, four in all, whose duty it was to stand just inside the entrance door to see that only adults got in. The only permissible exceptions were females who were admitted if they were 18 years or over. Those ladies over 21 were specially marked with a stamp so they could be served beverages inside. It was well known in the general community that the Club had a rigid policy of non-service of alcohol to minors.
Daily orders were given by the owners to employees that girls under 18 and boys under 21 were definitely not to be admitted. The standard method of establishing identification of boys was the required production of their driver's licenses or draft cards. Once inside, the patron was still not assured of being served beverages as the bartenders and waitresses were given a margin of discretion themselves to refuse service or demand identification from those of suspicious age.
On the night in question the two young men, Cain and Langford, who had never been in the Club building before, entered together shortly before midnight, and it is obvious from the record they were there on a lark, intent upon using any ruse or strategy that might be presented at the moment to effect entrance. And it is likewise obvious that, as sometimes happens in human affairs, the "long shot" paid off and the ruse worked. They timed their entrance to coincide with other people going in and succeeded, in the ensuing confusion, in diverting the instant attention of the two doorkeepers on duty so as to pass to the interior. Cain was actually called back at first by one of the door-checkers, who began to question him, but then the checker's "attention was diverted to another" and Cain "just slipped by". The other boy, Langford, testified he slipped by while the two door-checkers "were checking ID's of other kids". On the night in question a minimum of 600 to 700 patrons were inside the Club.
Numerous patrons testified to the good reputation of the Club in the community concerning non-availability of alcohols to *324 minors and the rigorous requirements of the owners for entry into the building. The findings of the Director were that the two door-checkers on duty at the moment were negligent, but he did not find that the owners were culpably responsible for any violation.
Since the beverage law was first enacted in Florida in 1935, there has been built up a body of case law in the State that, though perhaps small in quantity is respectable in quality, so that the standard of diligence required of the owner of a beverage license to withstand revocation or suspension of his license is fairly well blocked out. The controlling cases are Cohen v. Schott, Fla. 1950, 48 So.2d 154; Pauline v. Lee, Fla.App. 1962, 147 So.2d 359; Trader Jon, Inc. v. State Beverage Dept., Fla.App. 1960, 119 So.2d 735, and by analogy Tropical Park, Inc. v. Ratliff, Fla. 1957, 97 So.2d 169. A discernible pattern of judicial law respecting administrative revocation of privileged licenses has been built up.
Pauline v. Lee is a case representing the extreme in derelictions of an owner of a privileged license. Pauline was an appeal from a Circuit Court order upholding the license revocation by the State Beverage Director of a night club in Tampa. The revocation order was grounded upon the fact "that five of the licensee's female employees offered to commit prostitution with (the state's witnesses) at various designated times over a three day period during March of 1961". This Court's opinion quoting from and adopting the Circuit Judge's order as to the facts adduced at the hearing before the Director, said:
"At a hearing held by the beverage director pursuant to Section 561.29 F.S.A., two beverage department agents and two City of Tampa police officers testified that various entertainers at the Celebrity Club, who were employed by petitioner, sat with each one of the beverage agents and police officers on separate occasions during the nights of March 21, 22, 23 and 24, 1961, induced them to buy drinks, and offered to engage in sexual intercourse with them for a consideration. None of the men followed through on the solicitations and no sexual intercourse was consummated on any of these occasions. The respondent's witnesses testified that the bartender at the Celebrity Club was in a position to hear some of the conversations between them and the girls."
The Director had originally made findings in line, but more in detail, with the observations of the Circuit Judge aforesaid. The opinion of this Court in Pauline thereupon resumed:
"In the exercise of a quasi-judicial function where a decision is reached after a full hearing conducted pursuant to notice, such as was the case here, the findings of an administrative agency ordinarily will only be overturned on review upon a showing that they are not supported by substantial competent evidence. United States Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741; Nelson v. State, (1945), 156 Fla. 189, 23 So.2d 136, cert. denied 327 U.S. 790, 66 S.Ct. 809, 90 L.Ed. 1016; Schott v. Brooks, Fla. 1952, 56 So.2d 456; Florida Industrial Commission v. Nordin, supra, [Fla.App., 101 So.2d 890;] De Groot v. Sheffield, Fla. 1957, 95 So.2d 912, defining substantial evidence as such evidence as a reasonable man would accept as adequate to support a conclusion. It is not incumbent upon the reviewing court to resolve conflicts in the testimony adduced before an administrative tribunal. Evidence is weighed by the administrative agency and not by the courts. Florida Rate Conference v. Florida Railroad & Public Utilities Commission, Fla. 1959, 108 So.2d 601. Nor, if it were so inclined (which, on the record here presented, this court is not), should the court substitute its judgment for that of the administrative fact finder who heard the testimony and was in a position to evaluate the credibility of witnesses. Pritchett v. Florida Real Estate Commission, Fla. App. 1962, 143 So.2d 45."
*325 The Pauline opinion then decided the merits of the appeal by first quoting F.S. Section 561.29(1) (a) F.S.A., viz:
"(1) The director is given full power and authority to revoke or suspend the license of any person, firm or corporation holding a license under the beverage law, where it is determined or found by the director upon sufficient cause appearing of:
(a) Violation by the licensee, his or its agents, officers, servants or employees, on the licensed premises, or elsewhere while in the scope of employment, of any of the laws of this state * * *. (Emphasis supplied)
A literal reading of the above quoted provision would indicate that a liquor licensee is under the onus of suspension or revocation of his license for any violation of law committed by his employees on his premises, irrespective of his own personal fault in connection therewith. However, the case of Cohen v. Schott, Fla. 1950, 48 So.2d 154, decided by the Supreme Court, and the case of Trader Jon, Inc. v. State Beverage Department, supra, decided by the First District Court of Appeal, both appear to lay down the rule that, before his license can be suspended or revoked for a violation of law on his premises, a licensee should be found to have been culpably responsible for such violation through or as a result of his own negligence, intentional wrongdoing or lack of diligence. In each of these cases intoxicants were admittedly sold to minors in violation of the law after said minors had deceived employees of the licensee into believing that they were of legal age. The facts in each case showed that the prohibited sales were made despite the owner's efforts to prevent same. In each case the owner was charged with but one single violation and the beverage department's order of suspension was overturned by the appellate court. In view of these cases, we do not construe Section 561.29(1) (a), Florida Statutes (1959), F.S.A., as requiring a liquor licensee to be an absolute insurer against violations of the law on his premises committed by or through his employees. Neither do we interpret the order of the beverage director and that of the lower court in this case as holding the licensee to such strict accountability. The persistence and practiced manner with which the solicitations described by the state's witnesses were made is sufficient to permit a factual inference leading to the conclusion that such violations of law were either fostered, condoned or negligently overlooked by the licensee, notwithstanding his absence from the premises on the dates in question."
It is obvious the facts in the instant case do not begin to measure up to the reprehensible occurrences on the owner's premises in Pauline.
Cohen v. Schott was an opinion written by Mr. Justice Terrell for the Supreme Court, reversing an order of the Circuit Court upholding an order of the Beverage Director "revoking" an alcoholic beverage license for 15 days. In that case the licensee, operating a bar on Miami Beach, had permitted the selling of beverages "to persons under twenty-one years of age", for which, after hearing and findings of fact accordingly, the administrative penalty had been so assessed. The opinion, after stating the facts, laid down the standard of care to be observed by a licensee in policing his premises, in the following language:
"The law places the responsibility on the licensee to determine who are under the age of twenty-one, but to ascertain this there must be some reasonable standard of diligence to bound his inquiry. It would seem that when one operates a cocktail bar or lounge, makes it generally known that minors are not admitted for drinking purposes, frequently instructs his employees to challenge those *326 who appear to be within the prohibited age, * * * he has made such effort as the law contemplates to comply with its requirements. He is certainly warranted in assuming that those who enter his place of business will not lie about their ages."
Justice Terrell thereupon, in his usual eximious and inimitable style, concludes the opinion in Cohen in the following vein:
"Men and women may be required to produce the family Bible or a vital statistic certificate to procure a pension or enlist in the army but the law prescribes no such requirement to be admitted to a cocktail lounge. Neither does it require the proprietor to arm himself with a lie detector to check the veracity of his patrons. * * * The law makes the sale of intoxicating beverages a legitimate business, imposes a high tax for the privilege of engaging in it and exacts a high degree of rectitude of those who do so. An inquisition into a charge of violating the conditions of one's license is in no sense criminal but equitable in nature and should be adjudicated on equitable principles.

In a collection of memorabilia of early Western history there was discovered the record of the trial of a man for stealing a pair of boots. The boots were indicated as exhibit A. The verdict of the jury was not guilty  but with the recommendation that the defendant return the boots. We are convinced that these primitive jurors had a very discriminating sense of justice that is too fast being relegated to the limbo of the law by technical niceties. I am often made to feel that a better brand of Justice would follow if we cultivated it more." (Emphasis supplied).
In Trader Jon, Inc. v. State Beverage Dept., the 1st District Court reversed a Circuit Court order upholding the suspension of a beverage license by the Beverage Director after charges and findings by the Director on facts quite similar to the case sub judice. There the licensee operated a combination bar and restaurant in Pensacola having a seating capacity of approximately 600. One night an employee of the licensee "sold and served one beer each to three minors". On the evening in question at about 11 o'clock P.M. "when there were about five hundred patrons in the establishment * * * the party composed of three minors stealthily gained entrance" through one of the outside doors. While on the inside each of the boys was served beer. One of them was 16 years old and the others were 18 years. They both knew the establishment did not cater to minors and they were both "apprehensive of being thrown out by the management". The opinion also states that 
"[t]he testimony fairly and without contradiction established that the proprietor or his assistant usually guarded the main entrance to keep minors out, regularly checked credentials of persons to establish their true ages, expelled minors from the premises, and maintained signs inviting attention to the fact that sales to minors were prohibited." (Emphasis supplied).
Observing that "the fact, standing alone, of a sale of alcoholic beverage to one who is discovered to be a minor does not necessarily constitute a sufficient ground for revocation or suspension of a beverage license", the opinion in Trader Jon then resumed:
"The term `competent substantial evidence' has been defined as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred; that it is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. De Groot v. Sheffield, Fla., 95 So.2d 912, 916.
* * * * * *
It seems clear * * * that the Director strictly construed the evidence and in so doing concluded, as a matter of law, that since it was established that the three *327 young men here involved were minors and that beer was sold to them on the premises, the licensee was necessarily negligent in permitting that to happen and, therefore, the license should be revoked or suspended, equitable consideration or extenuating circumstances notwithstanding."
The opinion reviews the case of Cohen v. Schott hereinbefore referred to and then mentions Davis v. Noland, Fla. 1954, 70 So.2d 512, wherein the Supreme Court affirmed without opinion a Circuit Court judgment quashing a suspension order entered by the Beverage Director, and referred to the Circuit Court's decision 
"* * * [r]endered by the late and highly respected Judge Fabisinski, in which it is said:
`Counsel for respondent emphasized the difficulty of establishing the lack of vigilance upon the part of proprietors of such places as these, and that adverse decisions in cases where there is proof of sales made to minors, makes it almost impossible for the Department to enforce compliance with the law. The court recognizes the force of this argument, and yields to no one in its solicitude for the moral welfare of youth, and in its interest in the strict enforcement of these provisions of law. But it cannot accept the proposition that the fact, standing alone, that sales of prohibited beverages are made to minors, is sufficient to subject the seller to penalty. It must be made to appear that the sale was made knowingly and wilfully, or that it was made negligently, without care to diligently attempt to prevent such sales.'" (Emphasis supplied).
After stating that "[t]he Director's findings also took into account the fact that subsequent to the hearing the licensee employed a person to stand on guard at all times at the main entrance of the establishment to screen minors from entering", the Court in Trader Jon summarized its holding in the following language:
"While this expedient is evidence of a superabundance of caution, there is nothing in the statutes or in reason requiring that step to be taken by all such licensees in order to avoid an implication of negligence in the operation of such business; and there is nothing in the record of this cause indicating that licensee's operation reasonably required that exigency. All that is required is that the licensee take every reasonable precaution to prevent violations of law. Parenthetically, the question of what sort of supervision was provided at the main entrance to the premises is impertinent because the youths gained entrance by stealth through an emergency door rather than the entrance provided for the public. The legislature has not and the courts will not legislate a requirement that such establishments keep a guard at the main entrance in order to avoid an implication of negligence, much less at emergency entrances and exits.
Having concluded that the Director's order has no competent substantial evidence to support it, the circuit court's order of affirmance is vacated." (Emphasis supplied).
The basic facts upon which the administrative order in Trader Jon was issued and the facts for revocation here are quite similar. Actually, however, the details are stronger in Trader Jon. There three minors were involved, one 16 years and the other two 18 years; here there were two boys, one 17 and one 20. There "numerous complaints * * * that youths were being served on the premises" had been previously made; here the evidence disclosed none. There the order was a suspension for a period; here it was an outright revocation.
In Tropical Park, Inc. v. Ratliff, the owners of Tropical Park Race Track had their license to operate a horse race track and conduct pari-mutuel wagering revoked by the State Racing Commission, after a duly *328 held administrative hearing, for violation of 
"* * * Rule 386(B) of the Commission, which reads as follows: `The Association is responsible to see that no unauthorized person used their telephones during the period from thirty (30) minutes prior to the first race to fifteen (15) minutes after the last race of the day.'"
Holding that, though the evidence before the Commission "was sufficient to show a technical violation of Rule 386(B)" the opinion stated 
"So the question now before us narrows down to whether or not the technical violation of the above-mentioned rule is sufficient to warrant the revocation of petitioner's license. In this connection the Commission contends that `[t]he writ of certiorari may not be used to determine the weight of the evidence or the sufficiency of the evidence where there is some evidence supporting the judgment complained of, and the Supreme Court will not examine the evidence to determine whether it is of sufficient probative force to sustain the verdict * *.' While administrative agencies are given broad latitude in the performance of their duties, we cannot accept a contention that their decisions in the exercise of quasi-judicial function are beyond the reach of the judicial process, regardless of how arbitrary or unreasonable they might be. To do so would be tantamount to an abdication of the power and responsibility reposed in the courts by Sec. 4 of the Declaration of Rights of our Constitution, F.S.A., in the following language:
`All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay.'
The rule as to judicial review of administrative decisions is well stated, and the statement supported by numerous decisions, in 42 Am.Jur., Public Administrative Law, Sec. 209, p. 610 et seq., as follows:
`In general, in the absence of valid statutory provisions or other factors affecting the scope and extent of judicial review, administrative determinations will not be interfered with by the courts unless, but will be interfered with where, the determination is * * * without or in excess of the statutory powers and jurisdiction of the administrative authority, the determination is an exercise of power so arbitrary or unreasonable as virtually to transcend the authority conferred, or is otherwise an abuse of discretion, * * *.'
This is the rule in Florida. See State ex rel. Williams v. Whitman, 1934, 116 Fla. 196, [150 So. 136], 156 So. 705, 95 A.L.R. 1416; Six Mile Creek Kennel Club, Inc. v. State Racing Commission, supra, 119 Fla. 142, 161 So. 58; Cohen v. Schott, Fla. 1950, 48 So.2d 154, 156; cf. Schott v. Brooks, Fla. 1952, 56 So.2d 456."
Reverting now to the instant case, the owners of the Cock & Bull contend here, first, that the facts do not under the cases warrant the revocation order, and second, that even if the order be here upheld on the merits, outright revocation was too drastic and should be modified by this Court. We do not have to consider the second contention because in our view the revocation order cannot be sustained.
The holder of an alcoholic beverage license is not, nor can he be, an absolute insurer of the propriety of all conduct and human activities upon his premises, either the general public as patrons or his employees and agents working for him. True, he is held to a high degree of accountability for law violation occurring during the operation of his establishment; but after all, he is still simply the designated holder of a right to do a privileged business under *329 the laws of Florida, the same as a citrus fruit dealer holding a packing house license, or the owner of a driver's license operating a motor vehicle. He must maintain a rigid standard of rectitude, both in his own personal conduct and also in supervising his employees, in the operation of his privileged business; but such conduct and such operation of his privileged business must always be judged on balance and not by any isolated instance. The beverage law, like the real estate license law, is aimed at flagrant or chronic offenders. As we said in Reid v. Florida Real Estate Commission, Fla.App. 1966, 188 So.2d 846, involving revocation of a real estate broker's license:
"This is not to say that an administrative licensing board should hesitate to take away such license  in a proper case and upon sufficient cause. An undeserving recalcitrant or chronic offender, especially in the field of serious matters, should be severely dealt with: he has forfeited his right and privilege to stand with the honorable members of his profession. But the struggle to acquire the privileged license in the first instance necessarily entails much sacrifice, hardships, expense, and physical and mental labor and endurance; and the summary revocation of such right is a most solemn thing.
* * * * * *
The power to revoke a license should be exercised with no less careful circumspection than the original granting of it. And the penal sanctions should be directed only toward those who by their conduct have forfeited their right to the privilege, and then only upon clear and convincing proof of substantial causes justifying the forfeiture." (Emphasis supplied).
Here the owners of the Cock & Bull took every reasonable precaution to keep male minors off the premises during operating hours, even more so than the law requires, as affirmatively stated in Trader Jon supra. At their own unrequired expense, they employed four door-watchers. They daily gave forceful instructions to all their help to see that unwanted minors did not intrude. There was no evidence of any fights, public disorders, soliciting of customers for immoral purposes, gambling, use of narcotic drugs, "rolling" of customers, or violations of similar type on the premises. There was none of the flagrantly culpable conduct and chronic violations present in Pauline v. Lee, supra, or in Torch Club, Inc. v. Keating, Fla.App. 1965, 174 So.2d 746, or in DeJoris v. State Beverage Dept., Fla. App. 1962, 145 So.2d 562, or in Life Bar & Package Store, Inc. v. State Beverage Dept., Fla.App. 1965, 174 So.2d 463.
The outright revocation of a beverage license is a most serious and drastic penalty, even in a flagrant case; it is comparable to the extreme penalty in a criminal case. Mr. Justice Ervin commented upon this in the Supreme Court case of Keating v. State ex rel. Ausebel, Fla. 1965, 173 So.2d 673, as follows:
"Establishments for the sale of intoxicating beverages may not to some be a most desirable business; but
`Even though a liquor license may have the character of a mere privilege insofar as governmental regulation of the alcoholic beverage industry is concerned, it must be recognized that in this state, as well as in many other states, due to the limitations respecting the number and location of liquor establishments and the conditions under which the license is issued, a liquor license has come to have the quality of property, with an actual pecuniary value far in excess of the license fees exacted by the state, county, and city. (Cases cited). Our statutes expressly recognize the transferability of a liquor license. Section 561.32, Florida Statutes 1949, F.S.A.' House v. Cotton, Fla., 52 So.2d 340.
* * * * *
`Padlocking, a severe remedy depriving one of the use of his property for lawful *330 purposes, should be exercised only as a necessary measure to enforce the law. Where the party is shown by his conduct to be a persistent violator of the law, determined to evade it, padlocking is proper, * * *". (Emphasis supplied).
The owner of a privileged license is not a super-man; he is still a human being and must be held accountable according to human standards. The advent of the holiday season reminds us that there has never been but one perfect Man and they crucified Him before He was middle-aged.
The writ of certiorari is accordingly granted and the administrative order here under review is quashed.
SHANNON, Acting C.J., and HOBSON, J., concur.
NOTES
[1] F.S. Sec. 561.29, F.S.A.; F.S. § 120.31, F.S.A.; Art. 5, Sec. 5(3), Fla. Const., F.S.A.
[2] F.S. Sec. 561.20(2), F.S.A.