120 So.2d 191 (1960)
John W. SHELTON, Petitioner,
v.
FLORIDA REAL ESTATE COMMISSION and Thomas J. Bermingham, Respondents.
No. 1623.
District Court of Appeal of Florida. Second District.
May 6, 1960.
*192 Caldwell, Pacetti, Robinson & Foster, West Palm Beach, for petitioner.
Benjamin T. Shuman, Winter Park, for respondents.
KANNER, Judge.
An information was filed by a representative of the Florida Real Estate Commission against John W. Shelton, charging him with violation of sections 475.25(1) (a) and 475.25(1) (c), Florida Statutes, F.S.A., in effecting the sale of a trailer park. The gist of the charges is that Shelton, as a broker, represented to certain prospective purchasers that a trailer park listed with him for sale was zoned for commercial purposes when in fact he knew it was not, and that he deliberately refused to return the deposit money upon demand although he knew he had no right to retain it. The commission found him guilty of misrepresentation and refusal to remit the earnest money deposit, suspending his license for a period of three months. Review of that order through certiorari is here sought by the petitioner.
Under section 475.25(1), Florida Statutes, F.S.A., the real estate commission may suspend a registered broker for a period not exceeding two years upon a finding of facts that he has:
"(a) Been guilty of fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing, trick, scheme or device, culpable negligence, or breach of trust in any business transaction, or has violated a duty imposed upon him by law * * *.
"(c) Failed to account or deliver to any person any personal property such as money, fund, deposit, check, draft, * * * which has come into his hands, and which is not his property, or which he is not in law or equity entitled to retain, under the circumstances, and at the time which has been agreed upon, or is required by law, or, in the absence of a fixed time upon demand of the person entitled to such accounting and delivery * * *." (Emphasis supplied.)
The charges arose from a real estate transaction between a Mr. and Mrs. Jones, as buyers, and a Mr. and Mrs. Spurr, as sellers, effectuated through the brokerage activities of Shelton. The property thus sold was a trailer park located in Palm Beach County. Jones first became apprised of the property through Shelton's advertisement of it in the local newspaper setting forth, among other things, that the "Property fronts on busy street zoned commercial with room to build stores." Upon reading the advertisement, Jones, on Saturday, January 3, 1959, telephoned Shelton. Later that same day he went to Shelton. Later that same day he went to Shelton's office, and the parties proceeded to the property and inspected it. Also on January 3, 1959, *193 in the afternoon, Mr. and Mrs. Jones, after preliminary negotiations, entered into a contract with the sellers to purchase the property, making a down payment of $1,000. The contract was subject only to health department approval of use by the Joneses of septic tanks in connection with certain plans for their trailer park installation.
As it developed, the Joneses, on Monday morning following their purchase of the property on Saturday, learned upon inquiry of the county zoning commission at the county court house that the property they had contracted to purchase was in fact not zoned commercial but residential, that it was being operated as a trailer park only subject to a conditional use permit, and that it would not be possible for the Joneses to erect stores on the property or use it for other commercial purposes.
At a meeting which had been arranged between the parties on Monday, the Joneses refused to go through with the transaction because the property was not zoned commercial as represented. They demanded return of the deposit money, but Shelton, refusing, asserted that he had no right to break the contract with the sellers. After conference with Shelton, the sellers decided to hold the Joneses to the contract.
At the hearing, Shelton explained that the portion of the newspaper advertisement which read, "Property fronts on busy street zoned commercial with room to build stores," involved a misprint, since the word "stores" should have been "storage," and that the meaning intended was that the street was a commercial one and that there was room for storage space or buildings on the property described. With reference to the deposit money, Shelton stated that it had been placed in an escrow account and was still there at the time of the hearing. Although the Joneses testified that Shelton gave them oral assurances the property was zoned commercially, Shelton denied this, stating that he had told the Joneses any changes would be subject to "county zoning." There was also an attempt to show that Jones had prior knowledge of the true zoning status of the property through attending a meeting of the county zoning commission on another matter at the time the zoning and conditional use permit of the trailer park came up, showing that the property was residentially zoned. However, Jones, admitting his appearance on that day before the zoning commission, denied he was present when the zoning and conditional use permit for the trailer park property was considered, and this was uncontroverted.
We do not regard as tenable here the commission's finding that Shelton had violated subsection 475.25(1) (c) through his refusal to return the deposit money to the Joneses, since the deposit money had been placed in escrow and since the sellers decided to hold the Joneses to the contract.
Next we consider the charge against Shelton that he, as the broker, made material misrepresentations to the Joneses as prospective purchasers.
It may be initially stated that civil litigation brought by the Joneses against the Spurrs to recover the deposit money has no bearing on this case. As a result of that suit, the circuit judge dismissed the complaint, holding that the Joneses could and should have learned of the zoning and that they were not entitled to rely on impressions made by the real estate agent. The cases cited by Shelton on rescission of contract of purchase and sale due to misrepresentations do not apply here. Those cases concern controversies between private individuals, while the present one, a disciplinary proceeding against a real estate broker, involves the public interest and should be dealt with as such. Curry v. Shields, Fla. 1952, 61 So.2d 326.
We are considering the statutorily imposed duties and responsibilities of a real estate broker in the practice of his profession. Whether or not Shelton did in fact make the material misrepresentations *194 charged is a serious matter, since in this state a real estate broker occupies a privileged position wherein those of his profession enjoy a monopoly to engage in a lucrative business. In turn, they are statutorily charged with a duty to prospective buyers as well as to the principals whom they represent. See Zichlin v. Dill, 1946, 157 Fla. 96, 25 So.2d 4; Chisman v. Moylan, Fla.App. 1958, 105 So.2d 186. The statutes regulating the activities of real estate brokers in their business were designed to protect the public and to safeguard those persons who put their money and trust in the hands of real estate brokers. Ahern v. Florida Real Estate Commission, 1942, 149 Fla. 706, 6 So.2d 857. Anyone who deals with a licensed broker may assume that he is dealing with an honest and ethical person, and the old rule of caveat emptor is cast aside. Zichlin v. Dill, supra.
In considering the misrepresentation charged, it is immaterial to the guilt of the broker whether the victim of the misconduct sustained any damage or loss, after discovery of the misconduct, or whether such victim was a customer or a person in confidential relation with the broker, or was an unidentified member of the general public. Section 475.25(1) (a), Florida Statutes, F.S.A.
Concerning the charge against Shelton, there was the newspaper advertisement which included the description, "Property fronts on busy street zoned commercial with room to build stores." Commonly a public street or thoroughfare is not in itself zoned for a particular purpose, but it may be in an area zoned for a specific use or uses. It is apparent that the property here involved, located as it is, would have a considerably greater value under commercial zoning than under a residential classification wherein the trailer park could operate only by virtue of a conditional use permit. The plausible interpretation of the wording of the advertisement is that the property was commercially zoned and that there was room on it to erect store buildings. Shelton well knew that the property was residentially zoned, since it was he who was instrumental in procuring the conditional use permit in order that the sellers, Mr. and Mrs. Spurr, might, subject to that permit, operate a trailer park. This he admitted. The commission's rejection of Shelton's subjective explanation of the advertisement is supported by the record.
On the question of whether or not Shelton orally assured the Joneses that the property was commercially zoned, the testimony taken before an examiner on that issue was in direct conflict. This conflict as to such misrepresentation was resolved by the commission against the petitioner, Shelton.
We may state that the examination of the property by the Joneses is of no effect in this case. The zoning of a parcel of land is not physical in nature and thus not discernible from visual inspection, even though the zoning classification might reasonably be deduced in many cases through viewing the property. Here, however, the true zoning classification was obscured because the property viewed was actually in commercial use as a trailer park through a conditional use permit and because there were other commercial properties to the north and west. The contract was entered into on a Saturday afternoon; the purchasers attempted to withdraw from it on the following Monday morning, immediately after they had discovered at the county court house, at their first opportunity, that the property was not commercially zoned.
The record sustains the commission's finding that Shelton was guilty of misrepresentation as charged. The petition for writ of certiorari is denied as to such finding, and that part of the order of the commission is quashed insofar as it relates to the charge of refusal to return the deposit. Accordingly, the cause is remanded with direction to enter an order to conform to the decision of this court, *195 and the commission is further authorized to modify the period of the suspension sentence if upon due consideration it should deem such action proper.
It is so ordered.
ALLEN, C.J., and SHANNON, J., concur.