ALLEN, Judge.
Richard H. Pritchett, Jr., petitions this -court to review the final order of the Florida Real Estate Commission.
The petition sets out the following facts: Pritchett is a registered real estate broker residing in Fort Myers, Florida; in September, 1958, he purchased certain lands in Lee County from John D. Powell and wife for $16,000; in December, 1958, Pritchett contracted with D. L. Smith and Allan Fayssoux to sell a portion of the lands for $20,000 through a time payment schedule, and this latter transaction was the genesis of the petitioner’s difficulty with the Florida Real Estate Commission.
Smith and Fayssoux contended that at the time Pritchett was discussing the sale of part of the land with them, which land he had purchased from Powell and wife for $16,000, Pritchett told them he was selling the land to them for what he had paid for the entire tract, reserving a part of the tract for his profit.
Pritchett’s version of the conversation was that he told the buyers that he was selling them the property for what he had invested in it, contending he had spent some $4,000 in improving the property since he purchased it. Therefore he was selling it to the buyers for what he had in the property and not for what he had paid for the property.
After Smith and Fayssoux had purchased the property, they placed it on the market for resale at a price of $27,500 and made their payments to Pritchett up to September 18, 1960. They defaulted on the $6,000 payment due on September 18, 1960.
On May 31, 1960, Jack King, an authorized representative of the Florida Real Estate Commission, filed an information with the Commission alleging the following:
“(1) In September, 1958, defendant entered into a contract to purchase the East half of the East half of the Northwest quarter of Section 18, Township 46, Range 25 East, Lee County, Florida, from the owners, John D. Powell, his wife, Katherine, and his son, John D., Jr., for a purchase price of $16,000.00.
"(2) On to-wit: December 26, 1958, defendant obtained an agreement from *46 D. L. Smith and Allan Fayssoux to purchase the part of the above tract of land lying north of Mullock Creek at a purchase price of $20,000.
“(3) At the time of obtaining said agreement from Smith and Fayssoux, defendant represented and stated to Smith and Fayssoux that he had recently purchased the land described in Paragraph (1) for $20,000.00 and was letting Smith and Fayssoux have the part north of Mullock Creek at his price for the whole, retaining that part south of Mullock Creek as his profit on his purchase.
“(4) Defendant, in representing and stating that he had paid $20,000.00 for the entire tract, is guilty of misrepresentation, false pretenses, in attempting to make and obtain for himself a $4,000.00 secret profit and is guilty of fraud and dishonest dealing, all in violation of Chapter 475, Florida Statutes [F.S.A.].”
In an amended answer, Pritchett admitted the purchase of the entire tract of land for $16,000 and alleged that he spent over $4,000 in improvements. He further alleged that he thereafter sold the north part of the tract to Smith and Fayssoux and retained the south portion for himself as a profit. Pritchett denied ever having represented that he purchased the entire tract for $20,000 or that he was selling the north pa.rt at the price he paid for the entire tract.
The Commission found that Pritchett was guilty of misrepresentation and false pretenses by representing that he was selling the land north of the creek for “exactly what he had paid Powell for the entire tract.”
In the case of Jonas v. Florida Real Estate Commission, Fla.App.1960, 123 So.2d 264, the Third District Court of Appeal, in its opinion, said:
“ * * * The findings of fact, orders and rulings of the Commission, as well as the administrative interpretations, are required to be given great weight in order to carry out the purposes and objectives of the law regulating real estate brokers.”
In the case of DeGroot v. Sheffield, Fla. 1957, 95 So.2d 912, the Supreme Court, in an opinion by Mr. Justice Thornal, said:
“Recurring to the problem at hand we are reminded that certiorari is a discretionary writ bringing up for review by an appellate court the record of an inferior tribunal or agency in a judicial or quasi-judicial proceeding. The writ is available to obtain review in such situations when no other method of appeal is available. Lorenzo v. Murphy, 159 Fla. 639, 32 So.2d 421. In certiorari the reviewing court will not undertake to reweigh or evaluate the evidence presented before the tribunal or agency whose order is under examination. The appellate court merely examines the record made below to determine whether the lower tribunal had before it competent substantial evidence to support its findings and judgment which also must accord with the essential requirements of the law. It is clear that certiorari is in the nature of an appellate process. It is a method of obtaining review, as contrasted to a collateral assault.”
The Florida Real Estate Commission Act, § 475.31(4) Florida Statutes, 31 F.S.A., provides:
“ * * * The findings of fact of the Commission shall have the same force and effect as the findings of a general master in chancery.”
In the case of Shelton v. Florida Real Estate Commission, Fla.App.1960, 120 So.2d 191, this court, in an opinion by Judge Kanner, said:
“Under section 475.25(1), Florida Statutes, F.S.A., the real estate commission may suspend a registered *47 broker for a period not exceeding two years upon a finding of facts that he has:
“‘(a) Been guilty of fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing, trick, scheme or device, culpable negligence, or breach of trust in any business transaction, or has violated a duty imposed upon him by law * * ”
sj< * ‡ * H* *
“We are considering the statutorily imposed duties and responsibilities of a real estate broker in the practice of his profession. Whether or not Shelton did in fact make the material misrepresentations charged is a serious matter, since in this state a real estate broker occupies a privileged position wherein those of his profession enjoy a monopoly to engage in a lucrative business. In turn, they are statutorily charged with a duty to prospective buyers as well as to the principals whom they represent. See Zichlin v. Dill, 1946, 157 Fla. 96, 25 So.2d 4; Chisman v. Moylan, Fla.App.1958, 105 So.2d 186. The statutes regulating the activities of real estate brokers in their business were designed to protect the public and to safeguard those persons who put their money and trust in the hands of real estate brokers. Ahern v. Florida Real Estate Commission, 1942, 149 Fla. 706, 6 So.2d 857. Anyone who deals with a licensed broker may assume that he is dealing with an honest and ethical person, and the old rule of caveat emptor is cast aside. Zichlin v. Dill, supra.”
We have reviewed the evidence adduced before the examiner for the Florida Real Estate Commission to ascertain if there was substantial evidence before the Commission to determine the issue against the petitioner, which primarily resolved itself to this focal question: Did Pritchett tell the purchasers of his property that he was selling the property to them for what it cost him or did he say he was selling the property to them for what he had in it, or words of similar import ?
At the hearing before the examiner, Allan Fayssoux, D. L. Smith, and the wives of Fayssoux and Smith testified, Mr. Pritchett testified and B. F. Johnston, a man who had done some repair work on the property, also testified in Pritchett’s favor.
Mr. Fayssoux testified, with reference to a conversation with Mr. Pritchett, as follows :
“Q Well what if anything did Mr. Pritchett say during the inspection of this property?
“A Well that he would keep this on the south side of the Creek as his, as his profit, and actually the discussion come up sometime during the day that he was selling us this property for exactly what he paid for it.
“Q Well what did he say that he had paid for it?
“A Well — and—-in other words he didn’t say but he — $20,000.00 is what we — in other words $20,000.00 was what we was supposed to pay for it but he was selling us the property for exactly what he paid for it.
* * * * * *
“Q Well when the matters concerning the ownership of the property and the price paid and price sold were discussed who was present if any other than you, Mr. Smith and Mr. Pritchett?
“A My wife and Mr. Smith’s wife.
******
“THE WITNESS: Here is, here is what was said, he said he was selling us the property for exactly what he had in it, all the profit he was getting out of it was the tract across the Creek, what land laid there across the Creek on tire south side.
*48 “THE EXAMINER: Just exactly what he had in the property?
“THE WITNESS: Yes that’s right, because I remember Mr. Smith asking him that one time, he said, ‘Dick are you sure you are selling us that for exactly what you got in it’, and he said, ‘yes.’ ”
It will be observed that Fayssoux testified both ways on this question.
D. L. Smith, the other purchaser of the property, testified in part as follows:
“Q Did he tell you what he had paid for this particular property?
“THE WITNESS: He told me that he was selling it to me at exactly what he paid for it.
“Q (BY MR. REESE:) And at what price did he propose to sell it to you?
“A 20,000. $20,000.
“Q And what representations did he make to you concerning the approximate acreage of the property?
“A He told me he says, ‘Well,’' he says, ‘the only thing I am making out of this property’ he says, ‘is there is a part that lays south of Muloch Creek,’ and he says, ‘I am going to reserve that,’ he says, ‘that is all I am making out of the property.’
******
“A (continuing) Personally we didn’t like what we had found out about it, about the way Mr. Pritchett had done, he said that he was selling it to us for exactly what it cost him.
* * * * *
“Q Well on this approximate date of 12 September, ’60 what discussion did you have personally with Mr. Pritchett then?
“A He stopped by my house when he was — he stopped by my house when we were cleaning up my yard from the Hurricane and he called me out to his car, he was in his car, and I told him then, I retold him I was not happy with the way that he did, that I had not asked him what he paid for the property that he out of a clear blue sky told me that he had — was selling it to me for exactly what he paid for it, that, that I was not happy with it, and he told me that it was none of my — shall I cuss?
“Q Yes sir, tell us what he told you.
“A (continuing) He told me it was none of my G— D— business what he paid for it.”
On cross-examination Mr. D. L. Smith testified in part as follows:
“Q Now Mr. Pritchett fixed the price of $20,000 for the property?
“A Yes sir.
“Q And he said that was exactly what he had in it?
“A He said that was exactly what he paid for it.
“Q You are sure that he did not say that that was exactly what he had. in the property?
“A He said ‘that is what I paid for it,’ he said, ‘I am selling it to you for exactly what I paid for it.’ ”
Louise Smith was called as a witness om behalf of the respondent and testified that she was the wife of D. L. Smith; that she was present during the occasion in. which Pritchett discussed with her husband, the purchase of certain real estate; that the conversation took place in the living room' of her home and that those present on that occasion were Mr. and Mrs. Fayssoux, Mr. Pritchett, Mr. Smith and herself. She further testified as follows:
“Q Well just tell me what if you will exactly what you heard him say/ *49 in your own words without any suggesting or prompting.
“A Well he said, ‘I am selling this to you for just what it cost me and the only thing I am making out of it is that piece of land across the creek and I am keeping that for myself.’
* c * * * *
“Q What did Mr. Pritchett say in your presence on any occasion concerning how much he paid for the property or the nature of the ownership that he had?
“A THE WITNESS: He says, T am selling this property to you for just what it cost me, my profit will be this piece of land I am keeping across the Creek.’ ”
On cross-examination Mrs. Louise Smith testified:
“Q And Mr. Pritchett told your husband he would sell the property for $20,000.00?
“A Yes.
“Q And that that was exactly what he had in the property ?
“A That is not the way he stated it, he said ‘Just what it is costing me — ’
“Q Yes ma’am.
“A (continuing) ‘And the profit I am getting is the piece of land I am keeping across the Creek.’ ”
Mrs. Allan Fayssoux testified that in 1958 she and her husband made a visit to the home of Mr. and Mrs. D. L. Smith, friends of theirs. She then testified as follows:
“Q And do you recall sometime in the afternoon about the 26th of December, 1958 when this gentleman Mr. Pritchett made a visit to the home of Mr. Smith?
“A I remember him being there but I don’t know what date it was really.
“Q Did you hear any conversation between Mr. Pritchett and Mr. Smith in which your husband may have participated with reference to purchasing some property on Muloch Creek?
“A Yes sir I sure did.
“Q Refreshing your recollection will you state to the Examiner exactly what you heard Mr. Dick Pritchett say on that occasion when he first came to the home?
“A I heard Mr. Pritchett say that he was selling them the place for just what he paid for it, all the profit, all the profit that he was making was the piece of land laying across the creek. That’s all I know, that’s all I heard him say.
“Q Did you hear him say what he had actually paid for it?
“A $20,000.00.
“Q Now will you think on this question, did he say that it was $20,-000.00 that he had paid for it or that he was selling it to them for $20,000.00 which was exactly the same sum that he had in the property?
“A He said he paid $20,000.00 for it.”
B. F. Johnston, a witness called on behalf of the petitioner, testified as follows:
“Q Your name is B. F. Johnston?
“A Yes sir.
******
‘‘Q Are you acquainted with Mr. Richard H. Pritchett the gentleman sitting here?
“A Yes sir.
“Q Have you from time to time done work for Mr. Pritchett?
“A Yes sir.
“MR. REESE: Just a moment, Your Honor I object to that line of interro *50 gation because in the answer there is no set allegation of the Defendant having spent sums of money in improvement of the land, and furthermore as I recall the allegations of the Complaint are that the Defendant represented and stated to Smith and Fays-soux that he had purchased the land for $20,000.00.
“SEN. FRANKLIN: Do you have a copy of the Amended Answer?
“MR. REESE: Amended?
“SEN. FRANKLIN: Amended Answer.
“MR. REESE: No sir I am not aware that such a document exists. Let’s see, I have a copy of an Answer filed on the 5th of June, 1961.
“SEN. FRANKLIN: Is it marked ‘Amended Answer’?
“MR. REESE: No sir. It is marked ‘Answer’.
“SEN. FRANKLIN: Well there is a copy of the Amended Answer which was sent to the Board, and on September 29th, 1961 we have acknowledgement from the Board of the receipt of the Amended Answer which was filed.”
Objection was made to the filing of the amended answer but subsequently the filing of it was permitted or authorized.
Mr. Johnston further testified that he had done certain work for Mr. Pritchett on the property located on Mulock Creek, such as pulling a fence down, clearing the land and painting the house. He testified that a lot of dead trees had to be cut down, moved off the premises and burned up — that it was just a regular clean up job and repairs. He further testified as follows:
“Q Did you render Mr. Pritchett bills covering the work which you did ?
“A Yes sir I rendered him bills for everything.
“Q And were those bills paid ?
“A Yes sir.
* * * * * *
“Q Those statements aggregating the amount of $3558.55, I ask you whether those statements were paid by Mr. Pritchett?
“A Yes sir they are all paid.
“Q Do those statements cover work performed by you on the Mulock Creek property?
“A Only on the Mulock Creek property, yes sir.”
On cross-examination Mr. Johnston testified as follows:
“Q Now on the occasion of your presentation to him of each of these numbered bills that I have in my possession did you furnish him with the invoices showing the people from whom you had purchased the various items of material which are here indicated?
“A No I didn’t do that. I think I presented the time sheets several times for labor.
* ifc # * * iji
“Q And may I ask in the case of the first bill of October 11, 1958 whether or not you were paid by a check of Dick Pritchett?
“A I can’t recall whether that was check or cash, sometimes its cash and sometimes it’s check.
“Q Was it his customary practice of paying you $1922.25 in cash?
“A Some of that was by check and some of it was by cash.
* * * ‡ *
“Q Now can you give us any general idea of which ones of these, I’ll submit them to you if you like, were paid by cash and which ones were *51 paid by check, you can refresh your recollection if you like.
******
“Q Which one was the October 11, ’58 bill, 1922.25 paid in cash or by check ?
“A Well that one was paid part in cash because I couldn’t wait until all that work was finished before I got a check, and finally I gave him the balance of the bill.”
A similar discussion took place concerning the other invoices submitted with the answers generally being that payments were partly in cash and partly by check.
Mr. Richard H. Pritchett, Jr. testified in part as follows:
“Q The bills rendered by Mr. Joynston (sic) and marked paid have been offered in evidence and aggregate $3558—
“MR. REESE: 55 I think sir.
“BY SEN. FRANKLIN: Q 3558.-55?
“A That’s right.
“Q Did you make payment to Mr. Johnston of the amount shown by those bills?
“A I did sir.
******
“Q Was that the first time you had seen Mr. Fayssoux?
“A Yes sir. I had heard of Mr. Fayssoux as his friend who might be interested in buying a piece of property with him; I want to explain this, I had told Smith that I would be desirous of trading him a piece of real estate for the $2,000.00 interest in the invention rather than paying him money, to which he had agreed, it was just a matter of finding the piece of real estate, and so when Fayssoux came along Smith brought him down and said now if you have a piece of real estate that we can handle together you can use the $2,000.00 that you owe me as payment, and I said ‘fine,’ and I said, ‘Now that there is two of you you can handle a little bigger piece than what you could have handled by yourself,’ so forthwith I took them to Mulock Creek, and everything is just as Smith and Fayssoux said with one exception sir, that at no time did I tell them that I paid $16,000 — paid $20,000.00 for the property.”
On cross-examination Mr. Pritchett further testified:
“Q And did you tell them that you had paid $16,000.00 for the property?
“A I don’t believe I did Sir, I mean I really don’t recall but I don’t believe there was any reason for me to tell them that I paid $16,000.00 so I doubt if I did.
“Q Well how did you arrive at the price of $20,000.00?
“A That was the price I wanted so I just chose it out of the air that morning. It sounded good, and it was good.
“Q Now according to the Recording Date of your previous purchase from the Powells on September the 19th that was recorded on the 1st day of October, 1958, will you check that and see if that is right?
“A No I believe that’s it, we made the deal, September to October, no that’s all right sir, there is nothing wrong with that sir.
“Q So then your copy of that Agreement for Deed was in your possession at that time as owner is that correct?
“A Yes sir.
“Q Did you show them this Articles of Agreement?
*52 “A No sir I didn’t, but I think that is what Mr. Fayssoux was referring’ to Sir this morning, that we discussed this agreement for Deed being on Record at the Courthouse and that I was sorry we couldn’t get in there to see it.
“Q But you just didn’t discuss with him the $16,000.00 figure?
“A I doubt it very seriously. I doubt very seriously if I discussed it with them.
% ifc ‡ s}c j{i J|i
“Q But they were not put on notice of the fact that you owed anything on this property were they?
“A Yes sir they were, they knew it, I told them.
“Q I said according to this Document.
“A No not according to that Document, no sir, but it was a matter of Public Record sir. I would like to bring that out really.”
There was a good deal of discussion between the parties as to whether or not Smith and Fayssoux knew that Pritchett was having to make payments on his purchase agreement to buy the property which he was selling to Smith and Fayssoux, after Smith and Fayssoux started making payments to Pritchett.
Mr. Pritchett was again questioned and testified as follows:
“Q * * * Did you have these bills ■ in your possession at the time that you negotiated on the sale of this property to Smith and Fayssoux?
“A Yes, yes, yes sir I did, someplace, but they hadn’t been totalled up and they hadn’t been looked at there were just in there.
“Q In what?
“A In the file.
“Q For the sake of showing what additional investment you might have made did you show them any of these bills?
“A No sir, no sir.
“Q Did you show any of these bills or explain the amounts of any of these bills in your discussion with the Investigator ?
“A No sir he didn’t ask me to.
“Q Well he asked you to explain the transaction didn’t he?
“A I explained everything sir that I thought was necessary to Jack. If he had asked me for them I would have showed them to him.
* * * * * *
“Q And did you think it was sufficient in importance and value that it should be made a part of your initial Answer filed in this case?
“A No sir I really didn’t sir, to tell you the truth sir I overlooked that.
“Q You mean you overlooked the fact that you had this extra $4,000.00 ?
“A I knew I had some money in it but I had no idea how much, I hadn’t even totalled them up, I had to ask my Secretary to find them Sir.
“Q And did she find any checks that you made and may have given him?
“Q No sir I paid most to that fellow in cash. I didn’t even look for them sir because I knew how I pay him, I paid him in hundred dollar bills and fifty dollar bills.”
The Examiner who heard the testimony had been appointed pursuant to the provisions of the Administrative Procedure Act, Chapter 120, Florida Statutes, created by laws enacted in 1961. The Examiner, after hearing the testimony, made the following findings of fact and conclusions of law:
*53 “In September, 1958, Defendant RICHARD H. PRITCHETT, JR. entered into a contract to purchase lands in Lee County described as East Half of the East Half of Northwest Quarter of Section 18, Township 46 South, Range 25 East, from the owners, JOHN D. POWELL, his wife KATHERINE and his son JOHN D. POWELL, JR. for a purchase price of sixteen thousand dollars ($16,000.00).
“On December 26, 1958, Defendant entered into an agreement with D. L. SMITH and ALLAN FAYSSOUX to sell that part of the above tract of land lying north of Mullock Creek at a price of twenty thousand dollars ($20,000.-00).
“The evidence shows that between September, 1958, when the Defendant purchased the property and December 26, 1958, when he entered into the contract with SMITH and FAYSSOUX to sell the property, Defendant placed certain furniture in the building located on said premises, and made repairs and improvements to the building. The Defendant introduced in evidence as Defendant’s Exhibit Number 3 a statement showing the purchase price and expenditures of $4,273.-83, made by the Defendant on the land, after the Defendant purchased the property from POWELL and before Defendant entered into the contract with SMITH and FAYSSOUX.
“Conflicting testimony was adduced at the hearing as to whether the Defendant, prior to the entering into the contract with SMITH and FAYS-SOUX for the sale of the land stated to SMITH and FAYSSOUX that he was selling the land north of the Creek for ‘exactly what he had paid POWELL for the entire tract,’ or whether he was selling the land for ‘exactly what he had in it.’
“D. L. SMITH, one of the purchasers of said lands, testified that prior to entering into the contract with Defendant for the purchase of said land that the Defendant stated he was selling the land north of the Creek to SMITH and FAYSSOUX for ‘exactly what he had paid POWELL for the entire tract.’ D. L. SMITH’S testimony was corroborated by LOUISE SMITH and MRS. ALLAN FAYS-SOUX.
“ALLAN FAYSSOUX, the other purchaser of said lands, testified that prior to entering into the contract with Defendant for the purchase of said land that the Defendant stated he was selling the land north of the Creek to SMITH and FAYSSOUX for ‘exactly what he had in it.’
“Defendant testified in his own behalf. He denied stating to SMITH and FAYSSOUX that he was selling the land to them at exactly what he had paid POWELL for the land.
“Having listened to all the testimony and having the opportunity to observe the demeanor of the witnesses and weigh the credibility thereof, I find that the Defendant stated to SMITH and FAYSSOUX that he was selling the land north of the Creek for ‘exactly what he had paid POWELL for the entire tract.’
“CONCLUSIONS OF LAW
“A real estate broker who purchased a tract of land for a purchase price of Sixteen Thousand ($16,000.00) Dollars and thereafter entered into a contract to sell a portion of said land for Twenty Thousand ($20,000.00) Dollars and represented and stated to the purchasers of said portion of land that he was selling such portion of land for the price he had paid for the entire tract, is guilty of misrepresentation and false pretenses within the intent and mean *54 ing of Section 475.25(1) (a), Florida Statutes [F.S.A.].
“Defendant offered evidence to show that he had made certain expenditures on the land after his purchase from POWELL and before he entered into the contract with SMITH and FAYS-SOUX. This evidence was objected to by counsel for the COMMISSION and was received by the Examiner subject to such objection. Objection was on the ground that the evidence was offered in support of the Amended Answer and that the Amended Answer was not properly before the COMMISSION. The Examiner reverses his ruling in sustaining the objections made by counsel for the COMMISSION, and now rules the evidence to be admissible.
“IT IS THEREFORE ORDERED that the Defendant RICHARD H. PRITCHETT, JR., be adjudged guilty of violating Section 475.25(1) (a), Florida Statutes [F.S.A.].
“Respectfully submitted, this 10 day of January, 1962.”
The final order of the Florida Real Estate Commission adopted the findings of the Examiner’s Recommended Order and findings of fact and the Commission adjudged the defendant guilty of violating Section 475.25(1) (a), Florida Statutes, F.S.A. For this violation the Commission imposed a penalty of suspending the petitioner’s registration as a real estate broker for a period of time.
We cannot say, under the evidence adduced before the Examiner, that the conclusions of the Examiner and the Florida Real Estate Commission were wrong, nor can we substitute our conclusions of fact for that of the Examiner.
Certiorari denied.
SHANNON, C. J., and SMITH, J., concur.