601 So.2d 245 (1992)
PIC N' SAVE CENTRAL FLORIDA, INC., d/b/a Pic N' Save Drugs # 44, Appellant,
v.
DEPARTMENT OF BUSINESS REGULATION, DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO, Appellee.
No. 91-329.
District Court of Appeal of Florida, First District.
May 28, 1992.
*246 Simon W. Selber of Selber & Selber, P.A., Jacksonville, for appellant.
Emily Moore, Asst. Gen. Counsel, Dept. of Business Regulation, Tallahassee, for appellee.
ZEHMER, Judge.
Pic N' Save Central Florida, Inc., d/b/a Pic N' Save Drugs # 44, appeals a final order of the Department of Business Regulation, Division of Alcoholic Beverages and Tobacco, ordering it to pay a $1,000 civil penalty and serve a 20-day suspension of its alcoholic beverage license for failing to prevent its employees from selling alcoholic beverages to persons under 21 years of age. Because the record does not contain competent, substantial evidence to support the conclusion that the illegal sales resulted from Pic N' Save's intentional wrongdoing, negligence, or lack of diligence, we reverse.

I.
Sometime in 1989 the Division received a complaint that the Pic N' Save store involved in this case had sold alcoholic beverages to minors. As a consequence, on September 20, 1989, Nicole Asbury, an 18-year-old undercover operative with the Division, entered the store under the supervision of two Division officers and purchased a six-pack of beer from a cashier, Patricia Crabtree. Ms. Crabtree did not ask for the purchaser's age nor request any identification to verify her age. Following this incident, the Division sent the Pic N' Save store manager notice advising of the illegal sale and Ms. Crabtree's apprehension and notifying him to contact the Division to discuss the problem. As a result, on October 17, 1989, the store management conducted a general meeting for all employees to discuss procedures for preventing the sale of alcoholic beverages to minors. On October 18, 1989, the day following this meeting, Miss Asbury again entered the store under the supervision of Division officers. She picked up a six-pack of beer and asked a cashier, Minerva Trillo, if the register was open. Ms. Trillo responded, "Yes," and accepted payment for the beer without asking Miss Asbury her age or requesting any identification. On this occasion, *247 as well as in September, Miss Asbury wore casual clothes and very little makeup. On October 23, 1989, the Division issued a "Final Warning" letter to Pic N' Save. On February 2, 1990, Melissa Schuckman, an 18-year-old covert operative with the Division, entered the store under the Division's supervision and purchased a six-pack of beer from Milda Grabnickas, a cashier, who did not ask her age or request any identification. Sometime in January 1990, before this last incident, Pic N' Save asked the Division to provide assistance in instructing employees about illegal beverage sales to minors, and a Division representative apparently scheduled a meeting sometime in late February. In any event, a training session was conducted at the Pic N' Save store by Division personnel on February 26, 1990, after the third incident had occurred.
On February 13, 1990, the Division issued Pic N' Save a Notice to Show Cause at an informal conference why its beverage license should not be revoked or suspended and administrative penalties imposed based on the three illegal sales to minors by its employees, in violation of section 562.11(1)(a), Florida Statutes (1989).[1] Pic N' Save requested a section 120.57(1) formal hearing, asserting that disputed issues of fact existed, and alleging the affirmative defense of entrapment.
At the hearing, testimony was received from the two young operatives, the Division officers involved, two of the three cashiers, the store manager, and a Pic N' Save representative in charge of security matters. The Division's witnesses established the facts essentially as recited above. Only the testimony of the Pic N' Save employees needs further description.
Milda Grabnickas, a former Pic N' Save cashier, testified that the store manager, Ms. Gasparro, informed her during training to be very careful not to sell alcoholic beverages to anyone under 21 years of age; Ms. Gasparro instructed her to require customers attempting to purchase alcoholic beverages to provide identification showing their age even when such customers appeared to be over 21 years of age. Ms. Gasparro instructed her as to the forms of identification that were acceptable and the procedure for checking identification. Pic N' Save also provided her with a booklet that contained the store policy regarding the age limit for sales of alcoholic beverages and the procedure for checking the customer's identification, and she signed a statement acknowledging that she understood this store policy. Attached to her cash register was a card that reminded her to "[c]ard everyone who does not look over 40 no exceptions." Ms. Grabnickas testified that despite her understanding of Pic N' Save's policy, on February 2, 1990, she mistakenly sold beer to an underage customer. She explained that the sale occurred on a Friday afternoon after the end of her scheduled workday. She was tired, but she agreed to work overtime because the store was very busy. Several customers were standing in line at her register and, because she was rushing to check them out, she failed to ask a young woman who was purchasing beer for her identification. Pic N' Save fired her four days later because of this sale.
Minerva Trillo, a Pic N' Save cashier, testified that Ms. Gasparro instructed her during training that it was against the law and company policy to sell beer or wine to anyone under 21 years of age. Ms. Gasparro instructed her to check the customer's identification before beginning to ring up an alcoholic beverage sale. On October 17, 1989, she attended a meeting at Pic N' Save along with the other store employees. At that meeting, her supervisor spent approximately one-half hour explaining the cashiers' responsibility for checking customer identifications to ensure that no sales of alcoholic beverages were made to *248 minors. On October 18, 1989, while Ms. Trillo was gathering some items together to return to the shelves, a young woman appeared at her cash register and asked if the register was open. Ms. Trillo responded that it was, and sold the woman a six-pack of beer. She forgot to ask the woman for identification.
Ms. Gasparro testified that all of the cash registers in Pic N' Save display a sign that advises customers of the date before which they must be born in order to purchase alcoholic beverages. She stated that all cashiers are instructed to check the customer's driver's license before beginning to ring up an alcoholic beverage sale. She stated that Pic N' Save has fired a cashier for violating the policy with regard to checking identifications even where the violation did not result in a sale of alcoholic beverages to a minor. Furthermore, Pic N' Save fired two of the three cashiers who made the sales that are the subject of this case. At the security meeting on October 17, 1989, both she and Jim Pfeiffer, the head of company security, talked to the employees in great detail about checking identifications of customers attempting to purchase alcoholic beverages.
The hearing officer entered a recommended order with findings of fact consistent with the above evidence. The order then set forth the following conclusions of law:
5. The burden is on the Division to establish the elements of the allegations in the Notice to Show Cause by substantial, competent evidence, that is, "such evidence as a reasonable man would accept as adequate to support a conclusion." Pauline v. Lee, 147 So.2d 359, 363 (Fla. 2d DCA 1962).
6. [The Division] has clearly shown, by competent evidence, that on September 20, 1989, October 18, 1989 and February 2, 1990, three different employees of [Pic N' Save] did sell alcoholic beverages on the licensed premises to a person under the age of 21, in violation of section 562.11, Florida Statutes, as alleged in the Notice to Show Cause.
7. It is the responsibility of the licensee and its agents to determine the age of customers prior to selling them an alcoholic beverage, and the licensee or its agents must exercise a reasonable standard of diligence in doing so. Woodbury v. State, 219 So.2d 47, 48 (Fla. 1st DCA 1969); Surf Attractions, Inc. v. Department of Business Regulation, 487 480 So.2d 1354 (Fla. 1st DCA 1986); Lash, Inc. v. Department of Business Regulation, 411 So.2d 276 (Fla. 3d DCA 1982).
8. As Judge Rawls stated in Woodbury v. State Beverage Department, supra, at p. 48:
[A] liquor licensee is not an insurer against violations of law committed on his premises by or through his employees. The licensee is responsible to determine who is underage, but since the inquisition into a charge of violation is equitable in nature and not criminal, he is held only to a reasonable standard of diligence. Before a license can be suspended or revoked, the licensee should be found by the Director to have been culpably responsible for such violation as a result of his own negligence, intentional wrongdoing or lack of diligence.
9. [Pic N' Save] failed to adequately train or instruct its employees so as to assure the exercise of reasonable or due diligence in ascertaining the age of Ms. Asbury and Ms. Schuckman, prior to selling alcoholic beverages to them. A reasonable person would have observed the demeanor and dress of Ms. Asbury and Ms. Schuckman, and concluded that they were not of lawful age to purchase alcoholic beverages. Respondent's employees neither requested identification nor age information from either Ms. Asbury or Ms. Schuckman, and in fact, the evidence would indicate that they would have sold an alcoholic beverage to any customer appearing in their lines.
10. Although [Pic N' Save] is not an absolute guarantor of compliance with the laws applicable to its licensed premises, three separate instances of sales to underaged persons on its premises is evidence of negligence, Davis v. Shiappacossee, *249 155 So.2d 365 (Fla. 1963), and is a sufficient basis for imposition of administrative sanctions. In addition, although [Pic N' Save] had reminder signs at each register for its cashiers and customers, had occasional training on the beverage laws for its employees and a written policy that the sale of alcoholic beverages to a minor would result in termination of employment, this was not sufficient due diligence by the licensee to prevent the sale of alcoholic beverages to minors on multiple occasions.
* * * * * *
13. The sale of alcoholic beverages to underaged persons is a serious and continuing problem within this state. [Pic N' Save's] employees executed three sales of alcoholic beverages to underaged persons on [Pic N' Save's] licensed premises. [Pic N' Save] did not exercise due diligence in seeking assistance from [the Division] in addressing this issue or in insuring compliance by its employees through frequent instruction and direct supervision.
14. [Pic N' Save], as a licensee, is held to a high standard to ensure that its employees do not contribute to the improper use of alcoholic beverages by underage persons. Such extreme carelessness and negligence, as exhibited by [Pic N' Save], through its employees, in this case, cannot go unsanctioned. The guidelines utilized by [the Division] for the imposition of administrative sanctions offers an appropriate penalty and calls for a civil penalty of $1,000 and a 20-day suspension of its license.
The Division's final order substantially rejected Pic N' Save's exceptions and adopted the recommended order and penalty.

II.
Pic N' Save raises four points on appeal. Primarily, it argues that this court should reverse the final order because the Division failed to present any evidence that the beverage law violations committed by Pic N' Save's employees resulted from Pic N' Save's own negligence, intentional wrongdoing, or lack of diligence. The Division argues that the hearing officer reasonably imputed the negligence of Pic N' Save's employees to Pic N' Save based on evidence of recurring violations and Pic N' Save's "relatively limited efforts to educate its employees so as to prevent those violations."

A.
Before discussing the sufficiency of the evidence to support the charge, a question regarding the Division's burden of proof must be addressed. The recommended order held the Division to a lesser burden of proof than that required by law. It is now settled in Florida that a business license, whether held by an individual or a corporate entity, is subject to suspension or revocation only upon proof by clear and convincing evidence of the alleged violations. Ferris v. Turlington, 510 So.2d 292 (Fla. 1987); Evans Packing Co. v. Department of Agriculture, 550 So.2d 112 (Fla. 1st DCA 1989). The hearing officer in this case did not apply that burden of proof, ruling instead that the Division had the burden "to establish the elements of the allegations in the Notice to Show Cause by substantial, competent evidence, that is, `such evidence as a reasonable man would accept as adequate to support a conclusion.' Pauline v. Lee, 147 So.2d 359, 363 (Fla. 2d DCA 1962)." Apparently the hearing officer, and consequently the Division, which adopted his recommended order, failed to perceive the difference between the burden of proof on a party and the legal requirement that findings of fact shall be sustained if supported by competent, substantial evidence. These are two quite different concepts, although they are interrelated. Simply stated, whether the burden of proof applicable in a particular case is merely by a preponderance or greater weight of the evidence or by the more demanding standard of clear and convincing evidence, the facts found by the trier of fact under either standard must be supported by competent, substantial evidence. The order's reliance on Pauline v. Lee as authority for the burden of proof evidences a misconception of the legal issue decided in that case; the issue was whether the *250 agency's findings of fact were supported by competent, substantial evidence, not whether the correct burden of proof had been applied. We can only conclude from the language used in the order now before us that the hearing officer, and consequently the Division, applied the lesser burden of proof in effect when Pauline v. Lee was decided in 1962 and did not apply the clear and convincing evidence standard required by Ferris v. Turlington, a case decided many years after Pauline. This error alone would require reversal and remand for a new hearing; however, other errors discussed below require remand with directions to dismiss the charges.

B.
Because the three illegal sales relied on by the Division are so widely separated in time and involve only single incidents by each participant, we hold that these incidents cannot legally provide a basis for the inference of negligence and lack of due diligence necessary to support the Division's imposition of discipline.
Although the statutory language in section 561.29(1) has since 1957 spoken in terms of the Division's power to revoke or suspend a beverage license for violations of the beverage law committed by a licensee, or "its agents, officers, servants, or employees," the courts of this state have consistently construed and applied this disciplinary authority only on the basis of personal misconduct by the licensee. Thus, while an employee may violate the beverage law in making illegal sales of alcoholic beverages to minors, the licensee's culpable responsibility therefor is measured in terms of its own intentional wrongdoing or its negligence and lack of diligence in training and supervising its employees regarding illegal sales. This limitation on the licensee's liability is consistent with the notion, also long recognized by the courts of this state, that one's license to engage in an occupation is not to be taken away except for misconduct personal to the licensee.
The standard of conduct required of an alcoholic beverage licensee has evolved from a fairly nonspecific standard to one having well-defined requirements, beginning with Cohen v. Schott, 48 So.2d 154 (Fla. 1950). In that case, the operator of a hotel and bar forbade sales to persons under 21 and frequently gave orders to his employees not to dispense alcoholic beverages to minors or to admit them to his place of business for that purpose. His alcoholic beverage license was revoked after officials found two minors in the hotel dining room who had been served alcoholic beverages. The evidence showed that both the dining room captain and the waiter who served the minors had questioned them as to their age, and both minors had asserted that they were 21. In a brief opinion reversing the judgment entered against the licensee, the court stated:
The law places the responsibility on the licensee to determine who are under the age of twenty-one, but to ascertain this there must be some reasonable standard of diligence to bound his inquiry. It would seem that when one operates a cocktail bar or lounge, makes it generally known that minors are not admitted for drinking purposes, frequently instructs his employees to challenge those who appear to be within the prohibited age, they are in fact challenged in the manner shown here, and assert that they are twenty-one, which is to all outward appearances true, he has made such effort as the law contemplates to comply with its requirements. He is certainly warranted in assuming that those who enter his place of business will not lie about their ages.
Men and women may be required to produce the family Bible or a vital statistic certificate to procure a pension or enlist in the army but the law prescribes no such requirement to be admitted to a cocktail lounge. Neither does it require the proprietor to arm himself with a lie detector to check the veracity of his patrons. If one seeking admission looks so juvenile that the proprietor has grave doubt as to his age, he would undoubtedly have the right to require substantial proof, but when costume, visage and general appearance of the patron may easily be taken for those of an adult and *251 he repeatedly asserts his adulthood to the servants of appellant, we think it too harsh to revoke one's license because the patron lied to him.
48 So.2d at 155.
This court further circumscribed the appropriate standard of care in Trader Jon, Inc. v. State Beverage Department, 119 So.2d 735 (Fla. 1st DCA 1960). There, the State Beverage Department suspended the alcoholic beverage license of the operator of a combination bar and restaurant when three minors were found in the bar drinking beer. The minors had sneaked into the premises through an emergency exit door late one evening when approximately 500 patrons were in the establishment. When an investigating officer approached the young men and inquired about their ages, they stated that they were over 21 years of age and one exhibited a false identification card to that effect; they later admitted that they were minors. Uncontradicted testimony established that the proprietor or his assistant usually guarded the main entrance to keep minors out, regularly checked the identification of persons to establish their true ages, expelled minors from the premises, and maintained signs stating that sales to minors were prohibited. The Director of the State Beverage Department's order found that the sale in question was "made negligently, without due care to diligently attempt to prevent such sales," and suspended the licensee's alcoholic beverage license. The licensee filed a petition for writ of certiorari with the circuit court. That court denied the petition, ruling that the evidence adduced at the hearing was sufficient to support the Director's findings of fact and to warrant his suspension of the license. This court reversed, holding that the Director's finding of negligence was not supported by competent, substantial evidence. The court quoted with approval a circuit court decision, affirmed by the supreme court without opinion in Davis v. Noland, 70 So.2d 512 (Fla. 1954), which stated that the fact that sales of prohibited beverages are made to minors is, standing alone, not sufficient to subject the seller to a penalty. Rather, "it must be made to appear that the sale was made knowingly and wilfully, or that it was made negligently, without care to diligently attempt to prevent such sales." 119 So.2d at 739, 740.
In Pauline v. Lee, 147 So.2d 359 (Fla. 2d DCA 1962), cert. denied, 156 So.2d 389 (Fla. 1963), the second district added its interpretation of the standard of care set out in Cohen and Trader Jon, and discussed a factual inference that may be applied in certain cases to assist in reaching the conclusion that the licensee violated the required standard of care. There, the state presented evidence that three female employees of a nightclub repeatedly offered to commit prostitution with several undercover beverage agents and police officers over a four-day period, March 21-24, 1961, and that a bartender was in a position to overhear some of these solicitations. The licensee testified that he was out of town on the nights in question, that he instructed his female employees not to solicit or date customers, and that he had dismissed a few female employees for soliciting men to have sexual relations with them. The second district upheld the license revocation, stating:
A literal reading of [section 561.29(1), Florida Statutes] would indicate that a liquor licensee is under the onus of suspension or revocation of his license for any violation of law committed by his employees on his premises, irrespective of his own personal fault in connection therewith. However, the case of Cohen v. Schott, decided by the Supreme Court, and the case of Trader Jon, Inc. v. State Beverage Department, decided by the First District Court of Appeal, both appear to lay down the rule that, before his license can be suspended or revoked for a violation of law on his premises, a licensee should be found to have been culpably responsible for such violation through or as a result of his own negligence, intentional wrongdoing or lack of diligence. ... In view of these cases, we do not construe Section 561.29(1)(a), Florida Statutes (1959), F.S.A., as requiring a liquor licensee to be an absolute insurer against violations of the law on *252 his premises committed by or through his employees. Neither do we interpret the order of the beverage director and that of the lower court in this case as holding the licensee to such strict accountability. The persistence and practiced manner with which the solicitations described by the state's witnesses were made is sufficient to permit a factual inference leading to the conclusion that such violations were either fostered, condoned or negligently overlooked by the licensee, notwithstanding his absence from the premises on the dates in question.

147 So.2d at 364 (citations omitted) (emphasis added).
In Taylor v. State Beverage Department, 194 So.2d 321 (Fla. 2d DCA), cert. denied, 201 So.2d 464 (Fla. 1967), the second district refused to apply the factual inference described in Pauline v. Lee because the licensees were not shown to be flagrant and chronic offenders of the alcoholic beverage laws. There the licensees were owners of a nightclub and restaurant, and they maintained a rigid policy of nonservice of alcohol to minors. This policy was well known in the community, and the licensees ordered their employees daily not to violate such policy. Despite the lengths to which the licensees went to assure that minors were not served alcoholic beverages, two young men tricked their way into the club one evening and were each served a bottle of beer. The State Beverage Department revoked the owners' license, and the owners filed a petition for certiorari with the appellate court. The second district quashed the order of revocation, stating that the facts did "not begin to measure up to the reprehensible occurrences on the owner's [sic] premises in Pauline." 194 So.2d at 325. The court held:
The holder of an alcoholic beverage license is not, nor can he be, an absolute insurer of the propriety of all conduct and human activities upon his premises, either the general public as patrons or his employees and agents working for him. True, he is held to a high degree of accountability for law violation occurring during the operation of his establishment; but after all, he is still simply the designated holder of a right to do a privileged business under the laws of Florida, the same as a citrus fruit dealer holding a packing house license, or the owner of a driver's license operating a motor vehicle. He must maintain a rigid standard of rectitude, both in his own personal conduct and also in supervising his employees, in the operation of his privileged business; but such conduct and such operation of his privileged business must always be judged on balance and not by any isolated instance. The beverage law, like the real estate license law, is aimed at flagrant and chronic offenders.

194 So.2d at 328-29 (emphasis applied).[2]
Cases decided subsequent to Pauline and Taylor have consistently overturned alcoholic beverage license revocations and suspensions based on violations by licensees' employees where the facts did not show that such violations were persistent and recurring.[3]See Woodbury v. State Beverage Department, 219 So.2d 47 (Fla. 1st DCA 1969) (Where license suspension was based upon single sale of an alcoholic beverage to a minor who appeared to be an adult and who misled the bartender by telling him he had already checked the minor's ID card, the record did not contain competent, substantial evidence to support a finding that the licensee was culpably responsible for such violation as a result of *253 his own negligence, intentional wrongdoing, or lack of diligence.); G & B of Jacksonville, Inc. v. State, Etc., 366 So.2d 877 (Fla. 1st DCA 1979) (Where alcoholic beverage license was revoked on the basis of a single violation of the law by an employee and there was no evidence that the violative activity was persistent or recurring, the record did not contain competent, substantial evidence that the licensee was culpably responsible for the violation as a result of its own negligence, intentional wrongdoing, or lack of diligence.). Conversely, in cases where licensees' employees committed beverage law violations in a persistent and recurring manner over a relatively short time period, the factual inference that the violations were either fostered, condoned, or negligently overlooked by the licensee has often led to the affirmance of license revocation or suspension. See G & B of Jacksonville, Inc. v. State, Etc., 371 So.2d 139 (Fla. 1st DCA 1979) (Where six agents, servants, or employees committed violations on two different days, the persistent and practiced manner in which the violations were executed supported the conclusion that the licensee either condoned or negligently overlooked the illegal activities; "A licensee may not remove himself from responsibility by not being present on the premises or by claiming ignorance of the repeated violations."); Lash, Inc. v. State, Department of Business Regulation, 411 So.2d 276 (Fla. 3d DCA 1982) (License revocation upheld where evidence showed that on five occasions over period of one week, undercover beverage agents purchased controlled substances from two of licensee's employees.); Golden Dolphin No. 2, Inc. v. State, etc., 403 So.2d 1372 (Fla. 5th DCA 1981) (Customer's testimony that he had witnessed licensee's employees committing certain violations on several occasions prior to occasion on which license suspension was based was sufficient to support finding that licensee had knowledge of the violative activity).
Applying the legal principles made evident in this body of case law, together with principles found in license suspension or revocation cases generally, we agree with appellant that the hearing officer's recommended order, and thus the Division's final order, is factually and legally deficient. There is no evidence proving, and the order is silent as to, the "persistence and practiced manner" in which the licensee's employees were shown to have committed the three alleged violations of law. Although it is the function of the trier of fact to draw the inference of the licensee's negligence or lack of diligence from proof of several illegal sales by employees, it must be kept in mind that, "In Pauline the court stated that the persistent and practiced manner of the illegal activity proven in that case was sufficient `to permit a factual inference leading to the conclusion that such violations of law were either fostered, condoned or negligently overlooked by the licensee.'" Heifetz v. Department of Business Regulation, 475 So.2d 1277, 1282-1283 (Fla. 1st DCA 1985). In the course of explaining the function of that inference when determining the sufficiency of the evidence to prove the licensee's negligence or lack of due diligence, we further stated:
Additionally, we point out that:
[I]n those instances where courts have sanctioned revocation by the DBR because of simple negligence on a licensee's part for failing to exercise due care in the supervision of agents or employees who engage in unlawful activity on the licensee's premises, the courts have found repeated and flagrant violations by the employees which allow an inference that said violations had been fostered, condoned, or negligently overlooked by the licensee.

Charlotte County Lodge v. Department of Business Regulation, 463 So.2d 1208, 1212 (Fla. 1st DCA 1985); accord Taylor v. State Beverage Department, 194 So.2d 321, 329 (Fla. 2d DCA 1967); Lash, Inc. v. Department of Business Regulation, 411 So.2d 276; Bach v. Florida State Board of Dentistry, 378 So.2d 34 [(Fla. 1st DCA 1979)]. "Flagrant," by definition, means "glaring, notorious, scandalous," or "flaming into notice." The Compact Edition of the Oxford *254 English Dictionary, p. 1014 (Oxford University Press 1971).
475 So.2d at 1283.
In the case before us, there is no finding that any of Pic N' Save's employees acted in a "persistent and practiced manner" when making the illegal sales. Nor is there any evidence in the record that would support such a finding, or support a finding that the widely separated incidents were so "flagrant" that they must have come to the attention of Pic N' Save management and been ignored. In the absence of such evidence and findings, there is no factual basis for drawing an inference that the licensee has acted negligently or with a lack of due diligence in respect to supervision and training of its employees and preventing the sale of alcoholic beverages to minors.
The evidence shows that each incident involved a different cashier making a single illegal sale, one to four months after the prior illegal sale, in spite of Pic N' Save's efforts to instruct its employees to make age identification when selling to young-looking patrons. There is no evidence that an employee's conduct on any occasion could be characterized as "persistent and in a practiced manner." Rather, the evidence shows that on each occasion the cashier was aware of what was expected of her by Pic N' Save but merely forgot to verify age on the particular occasion. We do not mean to diminish the importance of a licensee's responsibility to train employees not to make illegal sales to minors, and to provide adequate supervision to see that these policies and instructions are carried out. But this case does not present the type of persistent and repeated instances of illegal employee conduct concentrated in a short period of time, as was the case in Pauline v. Lee, Lash, Inc., and other cases holding the licensee responsible for employee misconduct. The evidence in this case has shown no temporal or participatory connection in a pattern of conduct between the three separate incidents, nor any pattern of consistency as to any particular employee. In contemplation of the legal standards governing a licensee's responsibility for employee misconduct, these incidents are isolated events lacking the probative value necessary to support the loss of Pic N' Save's beverage license. As the Second District stated in Taylor v. State Beverage Department, a licensee's conduct and operation of its business "must always be judged on balance and not by any isolated instance. The beverage law, like the real estate law, is aimed at flagrant and chronic offenders." 194 So.2d at 329.
The hearing officer's recommended conclusions of law recite that Pic N' Save "failed to adequately train or instruct its employees so as to assure the exercise of reasonable or due diligence in ascertaining the age of Ms. Asbury and Ms. Schuckman, and concluded that they were not of lawful age to purchase alcoholic beverages." The conclusions of law also recite that, "although [Pic N' Save] had reminder signs at each register for its cashiers and customers, had occasional training on the beverage laws for its employees and a written policy that the sale of alcoholic beverages to a minor would result in termination of employment, this was not sufficient to prevent the sale of alcoholic beverages to minors on multiple occasions." These conclusions cannot be justified on this record.[4] The findings of fact recite that Pic N' Save had instructed its employees on their *255 duties, and the evidence does not support a finding of fact that the Pic N' Save employees made these sales because they were not fully informed of their duties and responsibilities regarding sales of alcoholic beverages to minors, or that they did not understand their obligation in that regard. There is no evidence, hence no finding of fact, as to a minimum level of instruction and training required for a licensee's employees beyond giving them instructions when employed on how to verify the age of purchasers of alcoholic beverages; nor does the record establish that Pic N' Save fell below any recognized minimum standards in this regard. At best, the evidence in this record establishes only a momentary lapse of memory on three temporally separate occasions by three different employees, nothing more.
The conclusions of law further recite that "the evidence would indicate that they [the employees] would have sold an alcoholic beverage to any customer appearing in their lines." There is no finding of fact to this effect, and we have been unable to find any competent, substantial evidence that would support such a finding.
The conclusions of law also recite that Pic N' Save "did not exercise due diligence in seeking assistance from [the Division] in addressing this issue or in insuring compliance by its employees through frequent instruction and direct supervision." Again, there are no rules or proven agency policy on this subject. There is neither evidence nor findings of fact regarding how frequently employees should be instructed, or how much direct supervision of employees is required in respect to prohibiting an employee from making illegal beverage sales to minors. It would appear from the language of the order that anything less than one-hundred-percent compliance with the law by a licensee's employees is sufficient to support a finding of culpability against the licensee, but that conclusion would make the licensee absolutely responsible for the acts of its employees and thus would be inconsistent with the law previously discussed.
As to lack of diligence in obtaining assistance from the Division, the hearing officer found that sometime in January 1990 (the precise date was in dispute), Pic N' Save requested assistance from the Division regarding training of its employees. Although this request was made after the second incident in October 1989 and before the third incident on February 2, 1990, the hearing officer concluded that it evidenced a lack of due diligence on the part of Pic N' Save. This conclusion prompts the question, how often is a licensee required to solicit Division assistance and how much assistance is required? Would a request in November or December, after the October incident, have been diligent enough for Pic N' Save to avoid culpability for its employees' illegal sales, or should the request have been made prior to the illegal sale in October, or even September? We cannot know the answer to these questions because the order and the record are silent as to what standard of required conduct Pic N' Save's delay in seeking Division assistance was judged against. Does the hearing officer, and consequently the Division, contemplate that all businesses possessing an alcoholic beverage license must seek Division assistance in training all employees in order to avoid being guilty of lack of due diligence in training employees? We do not know if the Division has the personnel, funding, and an established policy to carry out such extensive training programs for all licensees. In any event, the record in this case does not contain competent, substantial evidence of any agency policy and practice regarding Division training of licensee's employees that could serve as a standard of conduct against which Pic N' Save's request for assistance could be judged to be tardy and so deficient as to constitute competent evidence proving lack of due diligence.
The hearing officer cited Davis v. Shiappacossee, 155 So.2d 365 (Fla. 1963), for the proposition that, "Although [Pic N. Save] is not an absolute guarantor of compliance with the laws applicable to its licensed premises, three separate instances of sales to underaged persons on its premises is evidence of negligence, ... and is a sufficient *256 basis for imposition of administrative sanctions." The hearing officer misapplied Davis to this administrative disciplinary proceeding. Davis, and Tamiami Gun Shop v. Klein, 116 So.2d 421 (Fla. 1959), the case it followed, involved suits for personal injury damages. Each held that where the legislature prescribes a standard of conduct for the purpose of protecting life, limb, or property from a certain type of risk, and harm to the interest sought to be protected results from an unexcused breach of that standard of conduct, the violation of such standard constitutes negligence per se. While the statute Pic N' Save allegedly violated in this case, section 562.11, Florida Statutes, is the same statute that was involved in Davis, this case is not a civil negligence action for personal injury damages resulting from harm caused by the alleged illegal sales; the principles of respondeat superior applied in Davis have no application in determining whether Pic N' Save's license should be revoked or suspended; and the burden of proof to establish the licensee's personal misconduct in this case is significantly stricter than that applicable to civil cases such as Davis. Reliance on Davis as establishing the legal sufficiency of evidence to warrant depriving Pic N' Save of its beverage license led the hearing officer into further error, in that the order concluded as a matter of law that although Pic N' Save had taken diverse steps to prevent illegal sales to minors, these steps were "not sufficient due diligence by the licensee to prevent the sale of alcoholic beverages to minors on multiple occasions." In effect, the hearing officer concluded that evidence of illegal sales on at least three occasions was per se sufficient proof of lack of due diligence, regardless of the measures taken by Pic N' Save, to prevent such sales, for there was no evidence or findings of fact specifying what steps Pic N' Save should have taken to prevent these sales other than solicit the Division's assistance in training employees to prevent further such incidents.
Proof by clear and convincing evidence of a licensee's negligent training or lack of diligence in supervising its employees requires more than merely proving that three illegal sales occurred on the licensee's premises during a six-month period. The imposition of personal responsibility on the licensee for illegal sales by its employees requires proof of minimum standards of conduct, either by adopted rules, communicated agency policy, or expert testimony, against which the licensee's alleged misconduct can be judged. Otherwise, determining when a licensee is to be held responsible for employee misconduct will become simply a matter of personal opinion held by the hearing officer or the Division on a case-by-case basis without any firm standard for uniformity in application or enforcement. Because a license can be suspended or revoked only on the basis of the licensee's own misconduct, and the evidence in this case failed to prove such misconduct by Pic N' Save, we hold the evidence in this case legally insufficient to support the conclusions of law in the appealed order. The order is reversed and the cause remanded with directions to dismiss the charges.
REVERSED AND REMANDED.
ERVIN and BARFIELD, JJ., concur.
NOTES
[1] The Division is granted authority to revoke or suspend a beverage license when the Division finds that either the licensee or its agents, officers, servants, or employees have violated state laws regarding the sale, service, or consumption of alcoholic beverages. § 561.29(1), Fla. Stat. (1989). The Division is also authorized to impose a civil penalty against a licensee for any violation of the Beverage Law (Ch. 561-562, Fla. Stat.), not to exceed $1,000 for violations arising out of a single transaction. § 561.29(3), Fla. Stat. (1989).
[2] The hearing officer found in the instant case that the Division's present policy is not to issue a notice to show cause until three instances of alleged unlawful sales of alcoholic beverages to underage persons have occurred. This policy appears to have resulted from the discussion in Pauline, Taylor, and their progeny.
[3] In Surf Attractions, Inc. v. Department of Business Regulation, 480 So.2d 1354 (Fla. 1st DCA 1986), this court held that while sanctions may be imposed against the holder of an alcoholic beverage license based on a single violation of the beverage laws where the violation is committed by a corporate officer, rather than an employee, in such situation, the agency must still prove lack of due diligence by the corporate officer. 480 So.2d at 1356.
[4] Pic N' Save presented uncontroverted evidence that its manager, who personally trained the cashiers involved in these two incidents, placed great emphasis on the law and the store's policy against selling alcoholic beverages to minors. Ms. Gasparro showed each cashier the forms of identification that were acceptable and the procedure for checking identification. Pic N' Save placed signs at all cash registers reminding the cashiers to check identification if the customer attempting to purchase alcoholic beverages appeared to be under the age of 40, and placed signs in each lane reminding customers of the age requirement for purchasing alcoholic beverages. Pic N' Save provided each of its cashiers with booklets containing its policy and the law against selling alcoholic beverages to minors, and warned all cashiers that they were subject to termination should they fail to properly check identification. Pic N' Save holds at least two security meetings per year at which this policy is discussed, and makes attendance at these meetings mandatory for all employees. Two of the three cashiers involved in these three incidents were immediately terminated from employment.