977 So.2d 755 (2008)
M.H. and A.H., Appellants,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 2D07-1006.
District Court of Appeal of Florida, Second District.
March 28, 2008.
*756 Jean Marie Henne, Winter Haven, for Appellants.
Susan W. Fox of Fox & Loquasto, P.A., Tampa; Wendy S. Loquasto of Fox & Loquasto, P.A., Tallahassee; Douglas B. Sherman, Bartow; Jerome F. Major, Lakeland; and Gregory D. Venz, Tallahassee, for Appellee.
WALLACE, Judge.
M.H. and A.H. (collectively, the Foster Parents) appeal a final administrative order of the Department of Children and Family Services (DCF) that denied their application for the renewal of a foster care license. Because DCF erred in rejecting the recommended order's conclusion of law that the agency had to demonstrate by a preponderance of the evidence that the Foster Parents had violated section 409.175, Florida Statutes (2005), and Florida Administrative Code Rule 65C-13.010, we reverse the final administrative order and remand with instructions for DCF to enter a final order in accordance with the recommended order.

I. FACTS AND PROCEDURAL HISTORY
A. The Factual Background
M.H. and A.H. were foster parents for one boy and two baby girls. C.S., one of the two girls, was crying frantically on the night of December 19, 2005. A.H. heard C.S. and hurried to the bedroom C.S. shared with the other girl because she feared C.S. would wake up the other girl, who was ill. A.H. picked up C.S. by her left arm and C.S. slipped slightly, but A.H. retained her grip on the child's left arm. As A.H. picked up C.S., A.H. heard a "pop" similar to the noise created by cracking a knuckle. When A.H. lifted C.S. in this manner, A.H. injured C.S., causing a small chip fracture about a millimeter thick in the child's left elbow. The Foster Parents timely sought appropriate medical care for C.S., and they reported the child's injury to DCF. On December 29, 2005, DCF removed the three foster children residing with M.H. and A.H.
B. DCF's Notice of Denial
When the Foster Parents sought to renew their foster care license in 2006, DCF denied their application. In a letter to the Foster Parents notifying them of the denial of their application, DCF alleged that the injury to C.S. constituted child abuse and was a violation of the safety standards promulgated in Florida Administrative Code Rule 65C-13.010. DCF explained its decision as follows:
Child Protection Team Medical Director, Dr. William Brooks, reviewed the emergency room records and child's x-rays and concluded the injury was child abuse. Dr. Brooks sought a second opinion from Dr. Guidi, a pediatric radiologist at Tampa General Hospital. Dr. Guidi also concurred with Dr. Brook[s'] findings. Both doctors agreed that the injury required significant pulling force and could not be considered accidental.

It is the responsibility of the Central Zone Licensing Office to make a determination whether a foster home is in compliance with the standards for licensure set forth in the Florida Administrative Codes [sic] and the Florida Statutes. *757 Your lack of compliance with safety standards towards the foster children that were in your home at the time of the incident which are governed by Florida Administrative Code 65C[-]13.010 prohibits [DCF] from relicensing your home.
Please note that pursuant to Florida Statutes 409.175, [DCF] may deny, suspend, or revoke a license for noncompliance with the requirements for licensure. Any party whose substantial interests are affected by the determination to revoke has a right to request an administrative proceeding pursuant to Section 120.57, Florida Statutes, and rules promulgated pursuant thereto.
('Emphasis added.) Thus DCF's stated reason for denying the Foster Parents' application for the renewal of their foster care license was "that C.S., while in [the Foster Parents'] care, suffered an injury that `required significant pulling force and [that] could not be considered accidental.'" M.H. v. Dep't of Children & Family Servs., 29 F.A.L.R. 1658, 1661 (Dep't of Children & Family Servs. 2007) (second alteration in original).
The content of DCF's notice of denial to the Foster Parents largely determined the course of the proceedings that followed. Although the notice invoked section 409.175, it did not reference any specific subsection of the statute as a basis for the denial of the renewal of the license. The notice does mention rule 65C-13.010. This rule cites section 409.175 as the specific authority granting DCF the power to promulgate the rule. Section 409.175(9)(b)(2) states that DCF may deny a license based on "[a] violation of . . . licensing rules promulgated pursuant to [section 409.175]." For this reason, the references in the notice to noncompliance with licensure requirements and rule 65C-13.010 suggest that DCF may have intended to rely on subsection (9)(b)(2) as a ground for the denial.
During the administrative proceeding, the parties and the administrative law judge (ALJ) referred to section 409.175(9)(b)(1). Subsection (9)(b)(1) authorizes DCF to deny a license based on "[a]n intentional or negligent act materially affecting the health or safety of children in the home." (Emphasis added.) DCF's charge that C.S.'s "injury required significant pulling force and could not be considered accidental" alleged an intentional act rather than a negligent one. To be sure, DCF might have denied the renewal of the Foster Parents' license for a negligent act as well. See § 409.175(9)(b)(1). But the notice of denial did not include such an allegation. In the recommended order, the ALJ addressed this issue as follows:
Lifting C.S. from her crib by one arm arguably may be a negligent act that materially affected the health of C.S. without "significant pulling force." However, the notice of denial does not include such an allegation as a ground for non-renewal. Nor does the evidence submitted by [DCF] address the issue of whether lifting C.S. from her crib by one arm was a negligent act in the absence of "significant pulling force."
M.H., 29 F.A.L.R. at 1667. Thus the notice's exclusive focus on "significant pulling force" as causing a nonaccidental injury precluded DCF from urging negligence as an alternative ground for denying the renewal of the license at the administrative proceeding.[1]
C. The Administrative Proceeding
The Foster Parents exercised their right to an administrative proceeding under section *758 120.57, Florida Statutes (2005), and challenged DCF's finding "that the injury required significant pulling force and could not be considered accidental." At the hearing, the Foster Parents presented the testimony of Dr. John Camblin, C.S.'s treating physician. Dr. Camblin, an orthopedist, testified that the child's fracture was not a significant injury and was consistent with A.H.'s explanation. Moreover, Dr. Camblin stated that the injury did not require extraordinary force and was not related to abuse. Dr. Camblin explained that the type of fracture sustained by C.S. "can occur with relatively minimal force." According to Dr. Camblin, such a fracture could even be caused by something as innocuous as the child rolling over in bed. The ALJ found Dr. Camblin's testimony credible and persuasive.
DCF presented the testimony of Dr. William Brooks and Dr. Claude Guidi. Neither Dr. Brooks nor Dr. Guidi had examined C.S. Dr. Brooks, an emergency room pediatrician, and Dr. Guidi, a pediatric radiologist, testified that the child's injury could only have been caused by excessive force consistent with abuse. However, Dr. Guidi also testified that he could not quantify the amount of force needed to cause such an injury; he explained that merely lifting a child weighing twenty-five pounds could cause the type of fracture that C.S. sustained. Dr. Guidi testified based on Dr. Brooks' report. Dr. Guidi had no independent recollection of reviewing the child's x-rays.
D. The ALJ's Ruling
The ALJ found "that a preponderance of the evidence show[ed] the injury to C.S. did not require `significant pulling force' and could be accidental." M.H., 29 F.A.L.R. at 1664. The ALJ explained that the scope of the administrative hearing was limited to the allegations detailed in the notice of denial. Because DCF failed to demonstrate by a preponderance of the evidence that the alleged use of "significant pulling force" violated section 409.175 or rule 65C-13.010, the ALJ recommended that DCF renew the Foster Parents' license.
E. The Final Order
DCF determined that the Foster Parents' license should not be renewed. Instead, DCF entered a final order rejecting the ALJ's recommended order and denying the Foster Parents' application for the renewal of their license. M.H., 29 F.A.L.R. 1658. DCF based its decision on the premise that the evidentiary standard that it was required to meet before the ALJ was the "competent substantial evidence" standard. DCF explained that the ALJ erred in applying the preponderance of the evidence standard because
[DCF] . . . was required to present competent substantial evidence to support the stated reason for the denial. [DCF] presented the testimony of Dr. Brooks, a pediatric physician who is also the director of the Child Protection Team. Dr. Brooks diagnosed the injury as an "inflicted" (i.e. non-accidental) injury. Dr. Guidi, a pediatric radiologist, agreed that the injury was suggestive of abuse. Although the ALJ found Dr. Camblin's testimony more persuasive, the testimony of Drs. Brooks and Guidi is, nevertheless, competent substantial evidence supporting [DCF's] stated reason for denying the license application. [DCF] met the applicable evidentiary standard.
Id. at 1661. DCF accepted the ALJ's conclusions of law and pertinent findings of fact to the extent that they did not incorporate the preponderance of the evidence standard. Id. The Foster Parents appeal from the final order denying their application.

*759 II. STANDARD OF REVIEW
Florida's Administrative Procedure Act (the APA) sets out the standard of review an appellate court must employ when reviewing an agency decision. Section 120.68(10) requires that "[w]e must accept the ALJ's findings regarding factual disputes, the weight of the evidence presented, and the credibility of the witnesses." Wise v. Dep't of Mgmt. Servs., 930 So.2d 867, 870 (Fla. 2d DCA 2006). However, section 120.68(7)(b) provides further that an appellate court may remand a case to the agency for further proceedings or set aside agency action if the agency's action depends upon any finding of fact that is not supported by competent, substantial evidence established in the record of the administrative hearing. See. Wise, 930 So.2d at 870-71. Furthermore, section 120.68(7)(d) allows a reviewing court to "set aside an agency decision when the agency has `erroneously interpreted a provision of law and a correct interpretation compels a particular action.'" Manuel v. Dep't of Children & Family Servs., 880 So.2d 714, 716 (Fla. 2d DCA 2004). It follows that an appellate court reviews the agency's conclusions of law de novo. Wise, 930 So.2d at 871 (citing Steward v. Dep't of Children & Families, 865 So.2d 528, 530 (Fla. 1st DCA 2003)).

III. THE STANDARD OF PROOF APPLICABLE UNDER SECTION 120.57
A. DCF's Argument
DCF rejected the proposition that the preponderance of the evidence standard applied and held that "[t]he appropriate evidentiary standard requires [DCF] to establish that its determination to deny [the Foster Parents'] foster care license application was a reasonable decision supported by competent substantial evidence." M.H., 29 F.A.L.R. at 1660. DCF grounded this conclusion on its interpretation of Department of Banking & Finance v. Osborne Stern & Co. (Osborne Stern & Co. II), 670 So.2d 932 (Fla.1996),[2] and Mayes v. Department of Children & Family Services, 801 So.2d 980 (Fla. 1st DCA 2001). However, DCF's reading of these cases is faulty. DCF's erroneous interpretation stems from an apparent misunderstanding of the difference between standards of review, which are applied by a reviewing tribunal to test the correctness of a lower tribunal's ruling, and standards of proof, which concern evidentiary burdens that apply in an evidentiary hearing or in a trial.
In an attempt to explain why an evidentiary standard referred to as "the competent substantial evidence" standard applied in the administrative hearing, DCF offered the following analysis:
[Osborne Stern & Co. II, 670 So.2d 932] held that "an agency has particularly broad discretion in determining fitness of applicants who seek to engage in an occupation the conduct of which is a privilege rather than a right." Id. The court explained that an applicant applying for a license must bear the burden to prove that he or she is fit for licensure. Id. An agency denying an application for an occupational license must provide specific reasons for denying the license, but the court did not impose on agencies even a preponderance standard for supporting the stated reasons for denying an occupational license. The court required only that an agency produce competent substantial evidence. Id. The *760 same evidentiary standard has been applied to foster care license applications. Mayes v. Department of Children and Family Services, 801 So.2d 980 (Fla. 1st DCA 2001) (administrative decision denying a license must be supported by competent substantial evidence in the record).
M.H., 29 F.A.L.R. at 1659. However, neither Osborne Stern & Co. II nor Mayes stand for the proposition that the so-called "competent substantial evidence" standard is applicable as an evidentiary standard in a hearing conducted in accordance with section 120.57.
B. Analysis of Osborne Stern & Co. II
In Osborne Stern & Co. II, the Supreme Court of Florida considered a certified question concerning the applicable standard of proof for the denial of an application for registration to sell securities.[3] The Department of Banking and Finance had denied the application for registration based on specific violations of the securities laws that it contended had been committed by the applicants. Osborne Stern & Co. v. Dep't of Banking & Fin. (Osborne Stern & Co. I), 647 So.2d 245, 248 (Fla. 1st DCA 1994), approved in part and quashed in part by 670 So.2d 932 (Fla.1996). In an administrative hearing, the hearing officer had ruled that the Department had the burden of proving the alleged violations by a preponderance of the evidence. Id.
On appeal from the final administrative order, the First District agreed that the agency had the burden of proving that the applicants had committed the alleged violations in order to deny registration on that ground. Id. Notably, the First District concluded that the burden of proof shifted between the parties in the registration proceeding, and its ruling on this point is instructive:
The hearing officer correctly ruled that an applicant for licensure or registration to engage in a particular profession or occupation bears the burden of showing entitlement thereto by a preponderance of the evidence. However, that does not mean that the applicant must disprove that violations occurred as alleged by the Department; the Department had the burden of proving the alleged violations actually occurred if the registration is to be denied on that ground.
Id. However, the First District reversed the final administrative order because the court concluded that the agency was required to satisfy the clear and convincing standard of proof on this issue rather than the preponderance of the evidence standard. Id. at 248-49. The First District also certified a question of great public importance concerning whether the Department's evidentiary burden in a registration proceeding is governed by the clear and convincing standard. Id. at 249.
On review of the certified question in the Supreme Court of Florida, that court reaffirmed the rule that an administrative agency's burden of proof in a license application proceeding is governed by the preponderance of the evidence standard. Osborne Stern & Co. II, 670 So.2d at 934-35. Accordingly, the supreme court quashed that portion of the First District's decision that had extended the clear and convincing standard to license application proceedings. Id. at 935.
Here, we are not concerned with the application of the clear and convincing evidentiary standard. Instead, another feature *761 of the supreme court's decision in Osborne Stern & Co. II is important to our analysis of this case. Osborne Stern & Co. II stands for the proposition that in a license application proceeding, the agency has the burden of proving specific acts of misconduct by a preponderance of the evidence if it seeks to deny a license application on that ground. Id. at 935 ("Nothing about this case shows that the [preponderance of the evidence] standard invites an abuse of discretion by the Department in denying registration applications, or results in the denial of licenses which otherwise should or would be granted if the Department were put to a higher burden of proof." (Emphasis added.)). It follows that the supreme court did not hold  as DCF contends  that an "agency is only required to produce competent substantial evidence" to support the denial of a license. Instead, the court merely restated the basic principle that the standard of appellate review applicable to findings of fact in an administrative decision denying a license is the competent, substantial evidence standard. Id. at 934 n. 2. See generally Philip J. Padovano, Florida Appellate Practice § 23.7 (2007-08 ed.) (discussing the standards of judicial review applicable to administrative orders).
C. Analysis of Mayes
The other case on which DCF relies heavily is the First District's Mayes decision. In that case, Mr. and Mrs. Mayes had previously been licensed to operate a foster home in West Palm Beach. Mayes, 801 So.2d at 981. When they applied for a license for a new foster home in Marianna, DCF denied Mr. and Mrs. Mayes' application because they had used a harness on a foster child and had briefly locked the foster child in his room. Id. In its final administrative order, DCF ruled that the use of such restraints on the child violated the applicable statutes and regulations. Id. at 981-82. Based on this ruling, DCF denied Mr. and Mrs. Mayes' application. Id. On appeal, the First District noted that the ALJ had not made any specific findings concerning how the use of these restraints had violated the applicable statutes or rules. Id. at 982. In the absence of such findings, the First District reversed the final order denying the license and remanded the case for further findings and, if necessary, the taking of additional evidence. Id.
In its opinion, the Mayes court noted  without elaboration  "that . . . the ALJ did not err in imposing the burden of proof on [Mr. and Mrs. Mayes]." Id. at 981. Here, DCF cites this statement in support of its argument that "the applicant for a license has the burden of proof and the agency is required only to produce competent substantial evidence." This argument misreads Mayes. We note that the isolated statement in Mayes upon which DCF bases its argument does not explain the stage in the proceeding for which the ALJ imposed the burden of proof on Mr. and Mrs. Mayes. Without question, an applicant for a license has the initial burden of demonstrating his or her fitness to be licensed. Osborne Stern & Co. I, 647 So.2d at 248. But if the licensing agency proposes to deny the requested license based on specific acts of misconduct, then the agency assumes the burden of proving the specific acts of misconduct that it claims demonstrate the applicant's lack of fitness to be licensed. Osborne Stern & Co. II, 670 So.2d at 934.; Mayes does not  as DCF contends  stand for the proposition that the applicant for a license has the burden of disproving a charge of specific misconduct. Such an interpretation of Mayes is inconsistent with the First District's own earlier decision in Osborne Stern & Co. I, 647 So.2d at 248, and the *762 supreme court's decision in the same case. Osborne Stern & Co. II, 670 So.2d at 934.
D. The Difference between Standards of Proof and Standards of Review
DCF's interpretation of Osborne Stern & Co. II and Mayes misses the "distinction between the standard by which an administrative tribunal measures the proof presented to it, i[.]e., preponderance of the evidence, and the standard by which a reviewing court measures the correctness of an administrative order under review, i.e., competent substantial evidence." Fla. Dep't of Health & Rehabilitative Servs. v. Career Serv. Comm'n of Dep't of Admin., 289 So.2d 412, 415 n. 2 (Fla. 4th DCA 1974); see Douglas N. Higgins, Inc. v. Fla. Keys Aqueduct Auth., 565 F.Supp. 126, 129-30 (S.D.Fla.1983) (recognizing the distinction between the preponderance of the evidence standard of proof applicable in an administrative hearing and the competent, substantial evidence standard of review). The standard of proof that a party must satisfy and the legal requirement that an ALJ's findings of fact must be sustained if supported by competent, substantial evidence are different, but interrelated, concepts. Pic N' Save Cent. Fla., Inc. v. Dep't of Bus. Regulation, 601 So.2d 245, 249 (Fla. 1st DCA 1992). Whether the standard of proof applicable in a particular case is a preponderance of the evidence or clear and convincing evidence, the ALJ's findings of fact must be supported by competent, substantial evidence. Id. In this case, the final order's rejection of the ALJ's recommended order based on the use of the "competent substantial evidence" standard as a burden of proof reflects a fundamental misapprehension of the entirely distinct functions of evidentiary standards of proof and appellate standards of review.
Generally speaking, the standard of proof applicable in administrative hearings is a preponderance of the evidence. See Fitzpatrick v. City of Miami Beach, 328 So.2d 578, 579 (Fla. 3d DCA 1976); Fla. Dep't of Health & Rehabilitative Servs., 289 So.2d at 415. In fact, the APA requires that "findings of fact shall be based upon a preponderance of the evidence . . . except as otherwise provided by statute." § 120.57(1)(j) (emphasis added). DCF has not cited, either in the final order or in its appellate brief, any statute authorizing a different standard of proof in an administrative hearing on a challenge to the denial of the renewal of a foster care license. Accordingly, the ALJ applied the correct standard of proof to DCF's misconduct claim, and DCF erred when it rejected the ALJ's conclusion of law concerning the applicable evidentiary standard.[4]
E. The Application of the Law to the Foster Parents' Case
In this case, there was no issue about the Foster Parents' qualifications for licensure. They had already been licensed, and DCF had placed three children in their home. At the administrative proceeding, the Foster Parents presented their completed application. The only issue before the ALJ was DCF's stated reason for denying the application for the renewal of their foster care license, i.e., whether "C.S., while in [the Foster Parents'] care, suffered an injury that `required significant pulling force and [that] could not be considered accidental.'" M.H., 29 F.A.L.R. at 1661 (second alteration in original). This issue involved a charge of specific misconduct upon which DCF relied as its sole reason for the denial of the Foster *763 Parents' application for the renewal of their foster care license. Accordingly, DCF had the burden of proving this charge of specific misconduct by a preponderance of the evidence. Osborne Stern & Co. II, 670 So.2d at 934-35.
We understand that children in the foster care program are subject to the protection, care, guidance, and supervision of DCF. § 409.145(2). We also appreciate that DCF must exercise the utmost care in the selection of family foster homes in order to protect the health, safety, and well-being of the children placed in such homes. See § 409.175(1)(a). In addition, we are familiar with the statutory provision declaring that a foster care license is "a public trust and a privilege, and is not an entitlement." § 409.175(2)(f). However, in this case, DCF offered a precisely formulated reason for its denial of the renewal of the Foster Parents' license. At the administrative hearing, the ALJ properly restricted his consideration of the matter to the specific question that DCF itself had framed as the issue to be decided. Cf. Cottrill v. Dep't of Ins., 685 So.2d 1371, 1372 (Fla. 1st DCA 1996) ("Predicating disciplinary action against a licensee on conduct never alleged in an administrative complaint or some comparable pleading violates the Administrative Procedure Act"). On this specific issue, the ALJ found  based on conflicting evidence  that DCF had failed to prove the stated reason for its denial of the renewal of the Foster Parents' license by a preponderance of the evidence. This finding is the dispositive factor in this case.

IV. CONCLUSION
DCF has erroneously interpreted a provision of law, and a correct interpretation of that law compels granting the Foster Parents' application. Accordingly, we reverse DCF's final order, and we remand with instructions that DCF adopt the ALJ's recommended order and grant the Foster Parents' application to be re-licensed as a family foster home.
Reversed and remanded with instructions.
KELLY and VILLANTI, JJ., Concur.
NOTES
[1] For similar reasons, we decline to consider DCF's argument for affirmance of the final order based on the purported negligence of A.H. in lifting C.S. by one arm.
[2] We refer to the First District's opinion in Osborne Stern & Co. v. Department of Banking & Finance, 647 So.2d 245, 248 (Fla. 1st DCA 1994), approved in part and quashed in part by 670 So.2d 932 (Fla.1996), as "Osborne Stern & Co. I."
[3] Another issue before the court was the applicable standard of proof for imposing fines for alleged violations of the securities laws. Osborne Stem & Co. II, 670 So.2d at 933. This aspect of the court's decision is not material to our analysis in this case.
[4] Curiously, in the administrative hearing before the ALJ, DCF admitted that it had the burden of proving its abuse allegations. M.H., 29 F.A.L.R. at 1668 n. 2.